■ In the Matter of JERROLD FERRARO et al., Appellants, v TOWN BOARD OF TOWN OF AMHERST et al., Respondents. [914 NYS2d 525]—

Appeal from a judgment of the Supreme Court, Erie County (Rose H. Sconiers, J.), entered September 15, 2009 in a hybrid CPLR article 78 proceeding and declaratory judgment action. The judgment declared that Local Law No. 8 of the Town of Amherst is valid and lawful and otherwise dismissed the petition and complaint.

It is hereby ordered that the judgment so appealed from is affirmed without costs.

Memorandum: Petitioners-plaintiffs (petitioners) commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking, inter alia, to annul the determination of respondent-defendant Town Board of Town of Amherst (Town Board) in favor of rezoning two adjacent parcels of property north of Maple Road in the Town of Amherst (Town). The property at issue is owned by respondents-defendants Buffalo-Maple Road LLC and Buffalo-Anderson Associates, LLC, and respondent-defendant Benderson Development Company, LLC is their agent (collectively, Benderson respondents). The prop-

erty (hereafter, Benderson property) is situated to the east of a sports arena, to the south of the University at Buffalo North Campus (University) and to the south and west of the Audubon Golf Course (golf course). Most of the petitioners reside on the south side of Maple Road, which is a residential area. The Benderson respondents sought to have their property rezoned in order to construct various commercial buildings, condominiums and a hotel. After petitioners protested the proposed rezoning, the Benderson respondents amended the petition for rezoning to include a 101-foot buffer zone immediately adjacent to Maple Road, which would retain the same zoning classification. The Town Board approved the amended petition for rezoning by a vote of 4 to 3, concluding that the proposed rezoning was "generally consistent" with the Town's Bicentennial Comprehensive Plan (Plan). Supreme Court determined, inter alia, that the resolution approving the proposed rezoning passed by the Town Board's majority vote and that a three-fourths majority vote was not required, and the court otherwise dismissed the petition and complaint.

Petitioners contend that reversal is required because the owners of more than 20% of the property lying directly opposite the Benderson property had protested the rezoning and thus the petition for rezoning required the approval of at least three-fourths of the Town Board members (*see* Town Law § 265 [1] [c]). We reject that contention. Pursuant to Town Law § 265 (1) (c), the approval of at least three-fourths of the members of a town board is required in the event that an amendment is protested by "the owners of [20%] or more of the area of land directly opposite thereto, extending [100] feet from the street frontage of such opposite land." Petitioners contend that their properties were "directly opposite" the Benderson property and within 100 feet from the south side of Maple Road. Respondents, however, contend that petitioners' properties were required to be within 100 feet of the portion of the Benderson property to be rezoned in order for section 265 (1) (c) to apply. We agree with respondents.

Here, we must determine what area of property is referred to by the word "thereto" in Town Law § 265 (1) (c). The legislative history of that section establishes that subdivision (1) (c) was intended to apply to property directly opposite the property included in the proposed rezoning. The original proposed language of the statute provided that a three-fourths vote was required if written protests were filed by "the owners of [20%] or more of the area of land directly opposite *to that land included in such proposed change*, extending [100] feet from the

street frontage of such opposite land" (Recommendation of Law Rev Commn, 1990 McKinney's Session Laws of NY, at 2311 [emphasis added]). The word "thereto" in the statute as enacted was substituted for the emphasized language in the proposed statute. Inasmuch as there would be a 101-foot buffer zone between petitioners' properties and the rezoned portion of the Benderson property, we conclude that petitioners' properties are not directly opposite the property to be rezoned and that the property to be rezoned is not within 100 feet of the street frontage of petitioners' properties. Indeed, the buffer zone created by the Benderson respondents renders Town Law § 265 (1) (c) inapplicable (*see e.g. Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 314-315 [2006]; *Ryan Homes, Inc. v Town Bd. of Town of Mendon*, 7 Misc 3d 709, 712-714 [2005]).

Petitioners further contend that the driveways to the proposed development on the Benderson property should have been rezoned and that petitioners' properties would be within 100 feet of that rezoned property. The Commissioner of Building for the Town determined in a memorandum to the Town Board that the driveways would serve a dual purpose and thus were not required to be rezoned, and petitioners did not appeal that determination to the Zoning Board of Appeals. Even assuming, arguendo, that petitioners were not required to exhaust their administrative remedies with respect to the determination of the Commissioner of Building, we conclude that petitioners' contention lacks merit (*see Matter of Hampton Hill Villas Condominium Bd. of Mgrs. v Town of Amherst Zoning Bd. of Appeals*, 13 AD3d 1079 [2004]).

We reject petitioners' contention that the proposed rezoning violated the Town's Plan. "If the validity of the legislative classification for zoning purposes [is] fairly debatable, the legislative judgment must be allowed to control . . . Thus, where the [challenging parties] fail[ ] to establish a clear conflict with the comprehensive plan, the zoning classification must be upheld" (*Bergstol v Town of Monroe*, 15 AD3d 324, 325 [2005], *lv denied* 5 NY3d 701 [2005] [internal quotation marks omitted]; *see Matter of Meteor Enters., LLC, v Bylewski*, 38 AD3d 1356, 1358 [2007]). By its terms, the Plan was not "meant to dictate land use . . . [Rather, it] was intended to communicate the overall direction and concept of future development." It was "designed to be flexible . . . [and] to provide a generalized guide for future development." Pursuant to the Plan, property to the north of the golf course was set aside for a mixed-use center. The Plan also set aside the area of the Benderson property for park areas and green space, and residential areas along Maple Road were

to be protected "from further encroachments by new commercial development or redevelopment." In addition, however, the Plan sought to encourage commercial development near the University and permitted commercial development in specific corridors, including a section of Maple Road close to the location of the Benderson property. The Town Board concluded that the proposed rezoning was consistent with the Plan because of the Benderson property's proximity to the University, the fact that Maple Road was a major arterial road and the unlikely use of the Benderson property for any other development, based on its contamination and proximity to the sports arena and the University's stadium. Although the Benderson property is not adjacent to the University's campus loop or accessible by Millersport Highway, the Benderson property is still in proximity to the University and is close to the Plan's proposed location of a mixed-use center. Further, the Plan's proposed location for a mixed-use center is also across the street from a residential area and is buffered by green area in much the same way as the Benderson respondents' proposed development. Although the recreation space on the north side of Maple Road, as proposed in the Plan, will give way to commercial development, there will be a large recreational area preserved to the east of petitioners' properties. Keeping in mind that the Plan was intended to be flexible and was meant to provide a generalized guide to future development, we conclude that it is "fairly debatable" whether the proposed rezoning is consistent with the overall Plan (*Bergstol*, 15 AD3d at 325 [internal quotation marks omitted]). It is undisputed that the proposed rezoning of the Benderson property conflicts with the Plan's intended use of that property, but our review must be based on the Plan as a whole. Thus, because petitioners failed "to establish a clear conflict" with the overall Plan, the Town Board's zoning determination must be upheld (*id.*).

In view of our determination, we see no need to address petitioners' remaining contentions.

All concur except Fahey, J., who dissents and votes to reverse in accordance with the following memorandum.

Fahey, J. (dissenting). I respectfully dissent inasmuch as I conclude that Supreme Court erred in dismissing the petition and complaint seeking, inter alia, to annul the determination that approved the rezoning petition and amended the Bicentennial Comprehensive Plan (Plan) of the Town of Amherst (Town) and in declaring that Local Law No. 8 (2008) of the Town was valid.

I

This appeal arises from the efforts of respondents-defendants

Benderson Development Company, LLC, Buffalo-Maple Road LLC and Buffalo-Anderson Associates, LLC (collectively, Benderson respondents) to develop two adjacent parcels of property (collectively, Benderson property) located on Maple Road in the Town. The larger of the parcels, which was the former home of the Buffalo Shooting Club, consists of approximately 31.589 acres and had been zoned Community Facilities (CF). The smaller of the parcels consists of approximately 1.737 acres and had been zoned Residential 3 (R-3).

The Benderson property sits on the north side of Maple Road and is bordered on its west side by a residential area and on its north and east sides by the Audubon Golf Course (golf course). Both parcels of the Benderson property consist of primarily open, cleared space across Maple Road from a residential area. The Plan, which is intended, inter alia, "to communicate the overall direction and concept of future development . . . [and] to present a composite picture of the Town at full development," alternatively designates the Benderson property as a "Private Recreation Area[ ]," an area of "Recreation, Open Space & Greenways" and "Park/green space."

The Benderson property is within the "University of Buffalo Focal Planning Area" (FPA) set forth in the Plan, and the FPA also includes the University at Buffalo North Campus (University), the Pepsi Center sports arena and an area designated for the development of a mixed-use center (mixed-use area). The mixed-use area is situated to the north of the golf course, to the south and east of Millersport Highway, a divided highway that forms part of the University's campus loop, and to the south and west of Ellicott Creek. The mixed-use area is also located directly across Millersport Highway from the University.

The Benderson respondents seek to construct on the Benderson property a mixed-use development (hereafter, project) consisting of one- to three-story condominiums and townhouses, a five-story hotel and additional buildings housing retail and restaurant tenants. The proposed retail and restaurant buildings would be one- and two-story masonry and wood clapboard buildings, reminiscent of late nineteenth and early twentieth century buildings that would have been typical of "Main Street" towns in Western New York. Nevertheless, the size of the project is much more modern in scale. Indeed, plans for the project required four driveways to service traffic to and from Maple Road, and one of the traffic studies prepared in conjunction with the project indicates that those driveways will accommodate average weekday traffic of approximately 17,000 vehicles. Moreover, plans for the retail component of the project

call for over 200,000 square feet of space and development of that nature is, as one resident who spoke against the project accurately noted, equivalent in size to a Wal-Mart.

In any event, in February 2007 the Benderson respondents filed a petition for rezoning with respect to the Benderson property and proposed to rezone that property from CF and R-3 to General Business (GB) and Multi-Family Residential 67 (MFR-67) in order to construct the project. The Town of Amherst Planning Board (Planning Board) held a public hearing on the petition and, in a resolution reached on the same date as the public hearing, made various findings "outlining the project's consistency with the . . . Plan."

Shortly thereafter, several Maple Road residents signed petitions protesting the proposed rezoning, and respondent-defendant Town Board of Town of Amherst (Town Board) held a public hearing on the rezoning petition. From that point forward, the project changed slightly in scope, inasmuch as the Benderson respondents reduced the area to be rezoned to accommodate a 4.5-acre conservation project or buffer area extending 101 feet north of Maple Road. Thereafter, the Town Assessor concluded that a supermajority vote of the Town Board would not be required to enact the proposed rezoning, and the Commissioner of Building (Building Commissioner) concluded that the driveways providing access to the retail areas of the project would serve a "dual purpose" and thus would not need to be rezoned.

The Town was not the only municipal entity to review the proposed rezoning. By letter dated May 2, 2008, the Commissioner of the County of Erie Department of Environment and Planning (County) commented that, inter alia, the project "does not comply with the intent and objectives of the . . . Plan" because the Plan refers to the intended use of the parcels in question as a recreation or "green" area; the project would cause commercial development to encroach upon areas of Maple Road that were intended to be protected from encroachments of new commercial development or redevelopment; and the Plan called for mixed-use development in the mixed-use area. Nevertheless, that letter concluded with the statement that, "[o]ther than the foregoing comments, the County has no recommendation concerning the [p]roject." One month later, the Deputy Commissioner of the Erie County Division of Planning signed a General Municipal Law reply form indicating that it had no recommendation with respect to the proposed rezoning and that the proposed rezoning was deemed to be of local concern.

On June 2, 2008 the Town Board held a public hearing with

respect to the proposed rezoning and, at the conclusion of the hearing, it narrowly voted, inter alia, to "accept[ ] the recommendation of the . . . Planning Board that the proposed project and rezoning are consistent with the . . . Plan" and to "amend[ ] the . . . Plan to the extent the rezoning is inconsistent with the Plan and adopt[ ] the attached Statement of Findings and approve[ ] the rezoning of the [Benderson] property." The Town Board also enacted Local Law No. 8, which amended the Town's Code and Zoning Map to reflect the rezoning.

After that vote, petitioners-plaintiffs (petitioners) pursued judicial recourse. In a petition and complaint dated June 30, 2008, petitioners sought, inter alia, to annul the determination of the Town Board to rezone the Benderson property and to amend the Plan. The court declared, inter alia, that Local Law No. 8 is in all respects valid and lawful and otherwise dismissed the petition and complaint. This appeal ensued.

## II

Turning to the merits, I first consider the issue whether the rezoning violated the Plan. On that question, I agree with the majority's statement of the controlling principles of law. "If the validity of the legislative classification for zoning purposes [is] fairly debatable, the legislative judgment must be allowed to control . . . Thus, where the [challenging parties] fail[ ] to establish a clear conflict with the comprehensive plan, the zoning classification must be upheld" (*Bergstol v Town of Monroe*, 15 AD3d 324, 325 [2005], *lv denied* 5 NY3d 701 [2005] [internal quotation marks omitted]; *see Matter of Meteor Enters., LLC, v Bylewski*, 38 AD3d 1356, 1358 [2007]). I further note that the core of this appeal requires a two-part analysis, i.e., whether there was a clear conflict between the Plan and the rezoning and, if so, whether the Town Board properly amended the Plan to account for that inconsistency.

With respect to the first prong of that analysis, I conclude that petitioners established a "clear conflict" between the rezoning and the Plan (*Bergstol*, 15 AD3d at 325), and I begin with an examination of the nature of the Benderson property. The Plan characterizes the intended use of that property as recreation or "green" space. In sum and substance, at the heart of this case is the effort of the Benderson respondents to make the drastic conversion of the Benderson property from green space to a large plaza. The Benderson respondents characterize the project as a "mixed[-]use development," but the true character of the project is retail-oriented inasmuch as the plans call for the development of an extraordinary amount of retail space

designed to attract an equally extraordinary amount of traffic to what is basically a "green" and residential area. Even the environmental attorney for Benderson Development Company, LLC acknowledged that the project is intended to house "higher[-]end stores" in what is an affluent and densely populated area. Put bluntly, the question before us is whether retail development on the Benderson property equivalent in scale to a Wal-Mart clearly conflicts with the Plan's intent to protect the "green" nature of that property and the residential fabric of the surrounding area, and I cannot agree with the Town Board and the Benderson respondents that the question is even remotely debatable.

I further conclude that the rezoning is in clear conflict with the Plan inasmuch as the project will result in the encroachment of commercial development into "green" residential areas of Maple Road. The figures included in the Plan demonstrate that commercial development within the Town has largely been clustered around major thoroughfares and interchanges that are removed in distance from the project. The development of the project on the Benderson property would be an obvious departure from that strategy and pattern.

I also conclude that the placement of the project on Maple Road conflicts with the Plan's intent for development on the periphery of the University. The "Concept Plan" for the Maple Road area included within the Plan establishes why the part of that area designated for a mixed-use center is on the east side of Millersport Highway. That location is accessible by a portion of the University's campus loop that is a divided highway with two lanes of travel in each direction and, more importantly, it is isolated from nearby residential areas by the golf course on the south, Millersport Highway and the University campus on the west and a creek on the east. A mixed-use facility in that location would not interfere with residential areas and would be accessible to University students. By contrast, the project proposed by the Benderson respondents does exactly the opposite inasmuch as it interferes with residential areas and is reasonably accessible from the University only by vehicle.

Finally, with respect to the question of the conflict between the rezoning and the Plan, I conclude that the logic underpinning the determination of the Town Board that the proposed rezoning was consistent with the Plan is specious. The majority explains that "[t]he Town Board concluded that the proposed rezoning was consistent with the Plan because of the . . . proximity [of the Benderson property] to the University, the fact that Maple Road was a major arterial road and the unlikely

use of the Benderson property for any other development, based on its contamination and proximity to the sports arena and the University's stadium." Although the Benderson property has some degree of proximity to the University, it is significantly further from campus than the area designated for mixed-use development by the Plan. Contrary to the conclusion of the Town Board, the Plan does not designate Maple Road as a major arterial, and the alleged impediment to development presented by the nearby sports arena and stadium is simply not supported by the record. To reach the Benderson property from either of those venues, one would in all likelihood either travel in a circuitous route by vehicle or traverse on foot a four-lane highway, part of the area designated for mixed-use development by the Plan and a large part of the golf course. In any event, even assuming, arguendo, that those venues impede development of the Benderson property, I conclude that such an outcome is more consistent with the Plan's intent that the Benderson property constitute "green" space at the Town's full development.

## III

In view of my determination that there is a "clear conflict" between the rezoning and the Plan (*Bergstol*, 15 AD3d at 325), it is necessary for me to address the question whether the Town Board properly amended the Plan to reconcile that conflict. Before reaching the merits of that question, however, I note one of the fundamental problems with this case. On June 2, 2008, and as noted above, the Town Board resolved to accept the Planning Board's recommendation that the project and rezoning are consistent with the Plan and at the same time voted to amend the Plan to the extent that the rezoning is inconsistent with the Plan. That resolution is obviously inconsistent and, in layman's terms, the issue of the amendment of the Plan is not one that the Town Board can have "both ways." The Plan either did not require amendment for the rezoning to be lawful or it did require such amendment.

In any event, I conclude that the Town Board did not lawfully amend the Plan because the Town Board did not give proper notice of the proposed amendment and the Planning Board did not make a recommendation on the proposed amendment before the Town Board resolved to amend the Plan. With respect to the issue of notice, Town Law § 272-a (6) (a) provides that an amendment to a comprehensive town plan shall be preceded by at least one public hearing "to assure full opportunity for citizen participation in the preparation of such proposed . . .

amendment." Notice of that hearing "shall be published in a newspaper of general circulation in the town at least [10] calendar days in advance of the hearing," and the amendment shall be made available for public review during that period (§ 272-a [6] [c]).

Here, the record establishes that the Town Board resolved to amend the Plan at its June 2, 2008 meeting, and there is no indication of any public notice given with respect to that meeting. Indeed, the notices that actually appear in the record are deficient both in terms of their timing and content. Those notices pertain only to the September 4, 2007 meeting that commenced with the statement of the Town Supervisor that the Town Board would consider "the rezoning of Maple Road" and concluded with the Town Supervisor's indication that the Town Board would await the final draft environmental impact statement and another public hearing before acting on the issue. Moreover, the content of those notices is deficient inasmuch as they made no reference to an amendment to the Plan and, at some points, grossly understated the amount of retail space the project was expected to include.

Further, with respect to the input of the Planning Board on the proposed amendment to the Plan, I note that, according to the "Opportunity Review" part of the Plan's "Amendment Process," amendment of the Plan by the Town Board may be accomplished after the required public hearing on the action but not before the Planning Board has made a recommendation on the proposed amendment. Here, although the Planning Board resolved on June 28, 2007 that the project is consistent with the Plan, it did not adopt recommendations regarding the amendment to the Plan until October 16, 2008, four months after the June 2, 2008 hearing. Even at that time, the Planning Board's recommendation was unclear inasmuch as the Planning Board simply agreed to "[c]onsider [the] issue as part of the next annual review" and stated that "[n]o change to the Plan is recommended."

## IV

I next address petitioners' contention that the driveways to the proposed development should have been rezoned, and I reluctantly agree with the majority that petitioners are not entitled to relief with respect to that contention. The majority relies on *Matter of Hampton Hill Villas Condominium Bd. of Mgrs. v Town of Amherst Zoning Bd. of Appeals* (13 AD3d 1079 [2004]) in rejecting petitioners' contention, but, in my view, that case is inapposite to the facts of this case. The determina-

tion of the respondent zoning board of appeals in *Hampton Hill Villas Condominium Bd. of Mgrs.* that the driveway at issue did not require rezoning appears to have been based on the desire of the town's building commissioner to avoid harm to an existing business that used the driveway. The rezoning of the property around the driveway was intended to facilitate the construction of an office building that would be accessible by the driveway, and the rezoning of the driveway to the office building classification would have rendered the use thereof by the existing business nonconforming (*id.*). There is no similar existing business to protect here and, for that reason, *Hampton Hill Villas Condominium Bd. of Mgrs.* is irrelevant. Nevertheless, because they did not challenge the determination of the Building Commissioner with respect to the driveways to the proposed development before the Zoning Board of Appeals, petitioners "failed to exhaust [their] administrative remedies with respect to [that] issue" (*Matter of Peek v Dennison*, 39 AD3d 1239, 1240 [2007], *appeal dismissed* 9 NY3d 860 [2007]), and their contention that the driveways should have been rezoned is not properly before us.

## V

For the foregoing reasons, I would reverse the judgment, grant the petition, annul the determination that, inter alia, approved the rezoning petition and amended the Plan, and declare that Local Law No. 8 is invalid. Present—Smith, J.P., Centra, Fahey, Peradotto and Pine, JJ.