Dodson v Town Bd. of the Town of Rotterdam (2020 NY Slip Op 01234)





Dodson v Town Bd. of the Town of Rotterdam


2020 NY Slip Op 01234


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

528898

[*1]Charles John Dodson et al., Appellants,
v
Town Board of the Town of Rotterdam et al., Respondents.

Calendar Date: January 17, 2020

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Colangelo, JJ.


The West Firm, PLLC, Albany (Thomas S. West of counsel), for appellants.
Katherine A. McGuirl, Town Attorney, Rotterdam, for Town Board of the Town of Rotterdam, respondent.
Whiteman Osterman & Hanna LLP, Albany (John J. Henry of counsel), for Lecce Junior Living, LLC, respondent.



Garry, P.J.
Appeal from an order of the Supreme Court (Powers, J.), entered March 18, 2019, which granted defendants' motions to dismiss the complaint.
Plaintiffs own residential properties located in the Town of Rotterdam, Schenectady County adjacent to or opposite a parcel of land owned by defendant Lecce Senior Living, LLC. In July 2018, by a simple majority vote of three to two, defendant Town Board of the Town of Rotterdam voted to enact Local Law No. 7 (2018) of the Town of Rotterdam (see Code of the Town of Rotterdam ch 270, art XXXI [hereinafter Local Law No. 7]), which rezoned a part of Lecce's land comprising approximately 90 acres from A-1 agricultural to a newly-created senior living district (hereinafter SLD) to permit the development of a senior residential community (hereinafter the project). Before the vote, plaintiffs and other nearby landowners submitted protest petitions to the Town Board challenging the rezoning, which the Town Board rejected. Following the passage of Local Law No. 7, plaintiffs brought this action seeking an injunction and a declaratory judgment that the zoning change was invalid because it constituted impermissible spot zoning and also because their protest petitions triggered a requirement pursuant to Town Law § 265 that the rezoning must be approved by a supermajority vote.[FN1] Defendants moved separately pursuant to CPLR 3211 (a) (1) and (7) to dismiss plaintiffs' complaint. Supreme Court granted the motions and dismissed the complaint. Plaintiffs appeal.
Initially, we reject Lecce's contention that plaintiffs failed to exhaust their administrative remedies because they did not appeal to the Town of Rotterdam Zoning Board of Appeals before commencing this action. Plaintiffs' challenge is directed at the legislative action taken by the Town Board in enacting Local Law No. 7, not at any administrative action that the Zoning Board of Appeals would have had the authority to address. We likewise find no merit in defendants' related contention that plaintiffs' challenge is not yet ripe for review because the current plans for the project may eventually be altered in the site plan review process. Local Law No. 7 rezones part of Lecce's property as an SLD and further provides that access ways and utilities that will serve the project may be located outside the newly-created SLD without rezoning. Whether or not the land is used for these purposes, these provisions are legislative actions that plaintiffs have properly challenged by bringing this action for a declaratory judgment (see Matter of Committee to Preserve Character of Skaneateles v Major, 187 AD2d 940, 940 [1992], lv denied 82 NY2d 652 [1993]; Matter of Nassau Shores Civic Assn. v Colby, 118 AD2d 782, 783 [1986], appeal dismissed 68 NY2d 808 [1986]).
In a civil action, a motion to dismiss pursuant to CPLR 3211 (a) (7) requires the court to "give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference," and to dismiss the pleading if, upon that analysis, it fails to state a cause of action (Matter of Sullivan Farms IV, LLC v Village of Wurtsboro, 134 AD3d 1275, 1277 [2015] [internal quotation marks and citations omitted]; see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1054 [2009]). When a party moves to dismiss the complaint in a declaratory judgment action, however, "'the court should make a declaration, even though the plaintiff is not entitled to the relief that he [or she] seeks.' A mere dismissal is not appropriate" (Siegel, NY Prac § 440 at 848 [6th ed 2018], quoting Hirsch v Lindor Realty Corp., 63 NY2d 878, 881 [1984]). Upon such a motion, a court is not always precluded from addressing the parties' substantive claims. Where issues of fact are presented, the court should deny a motion to dismiss if the complaint "is sufficient to invoke the court's power to render a declaratory judgment . . . as to the rights and other legal relations of the parties in a justiciable controversy" (North Oyster Bay Baymen's Assn. v Town of Oyster Bay, 130 AD3d 885, 890 [2015] [internal quotation marks and citations omitted]). Where there are no questions of fact and the only issues presented are questions of law or statutory interpretation, "the motion [to dismiss] should be treated as one seeking a declaration in [the] defendant's favor and treated accordingly" (Siegel, NY Prac § 440 at 848 [6th ed 2018]; accord Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150 [2011]). Here, no issues of fact are raised. The resolution of plaintiffs' claims depends solely upon the interpretation of Town Law § 265, Local Law No. 7, and the Town's comprehensive plan — questions of law that the parties have fully briefed. Accordingly, the complaint should not have been dismissed, and we shall review the merits of the issues presented and declare the rights of the parties (see North Oyster Bay Baymen's Assn. v Town of Oyster Bay, 130 AD3d at 890; Spilka v Town of Inlet, 8 AD3d 812, 813 [2004]).
Plaintiffs contend that the rezoning of part of Lecce's property to the newly-created SLD classification constituted illegal spot zoning in that it "singl[ed] out a small parcel of land for a use classification totally different from that of the surrounding area for the benefit of the owner of said property to the detriment of other owners" (Matter of Citizens for Responsible Zoning v Common Council of City of Albany, 56 AD3d 1060, 1062 [2008] [internal quotation marks and citation omitted]; accord Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1362 [2011]). "As a legislative act, a zoning amendment enjoys a strong presumption of constitutionality and the burden rests on the party attacking it to overcome that presumption beyond a reasonable doubt" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1168 [2018] [internal quotation marks, ellipsis, brackets and citations omitted]; see Asian Ams. for Equality v Koch, 72 NY2d 121, 131 [1988]). To do so, the challenger must show that "there is no reasonable relation between the end sought to be achieved by the [zoning amendment] and the means used to achieve that end" (Matter of Birchwood Neighborhood Assn. v Planning Bd. of the Town of Colonie, 112 AD3d 1184, 1185-1186 [2013] [internal quotation marks and citations omitted]). "Fundamentally, and relevant here, if a zoning amendment is consistent with the municipality's comprehensive plan, it is not spot zoning" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1168 [citations omitted]; see generally Town Law § 263).
The Town's comprehensive plan states that the Town's senior population is growing and "will continue to have special needs for certain types of housing and services." To address these needs, the plan provides that the Town should "[e]xpand opportunities for housing arrangements to meet the increasing needs of the elderly and disabled" and "[e]ncourage development patterns that promote housing diversity, appropriate non-residential diversity, and conserve natural resources." Local Law No. 7 acknowledges that the comprehensive plan states a need for "safe, affordable and accessible facilities and residences for the Town's senior population," and provides that "[s]enior citizens require unique services and specialized living quarters for elderly and retired citizens who wish to live independently, but prefer to live in a community designed to support their needs" (Code of the Town of Rotterdam § 270-246 [A] [1], [2]). The principal use in the SLD created by Local Law No. 7 is a residential development for seniors to be made up of a combination of apartments, townhomes, single-family residences, assisted living facilities and memory care facilities, as well as dining, health care and recreational facilities for use only by residents and their guests (see Code of the Town of Rotterdam § 270-248 [A], [B]). We find no inconsistency between these provisions and the comprehensive plan's express recognition of the need for diverse, appropriate housing arrangements for the Town's senior population.
Contrary to plaintiffs' assertion, the rezoning of the SLD does not conflict with the comprehensive plan's recommendations that the existing residential character of the area where the SLD is located should be preserved and that commercial development should take place in another part of the Town. The SLD is a residential district. The inclusion of health and other services for the sole use of residents does not alter that conclusion, particularly in view of the plan's recognition that the residential needs of the Town's senior population include both housing and services. Likewise, the plan's recommendation that the Town should encourage "housing diversity [and] appropriate non-residential diversity" reveals that its references to accessory home care units and incentive zoning to facilitate the development of senior housing were not, as plaintiffs claim, intended to foreclose the development of other forms of housing such as the SLD. We thus find that Local Law No. 7 is consistent with the Town's comprehensive plan and that "[plaintiffs] have failed to demonstrate that the rezoning was arbitrary, unreasonable or unlawful" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d at 1169; see Matter of Citizens for Responsible Zoning v Common Council of City of Albany, 56 AD3d at 1062-1063).
Plaintiffs' next contention presents an issue of first impression in this state. As factual background, Lecce initially applied for a zoning change in March 2017 but withdrew the request. Several months later, Lecce submitted a second rezoning application that requested the enactment of Local Law No. 7 rezoning part of its property as a SLD, and included a revised project plan reducing the size of the area proposed to be rezoned and the number of residences included. The revised project plan created 100-foot-wide buffer zones that were not to be rezoned between the SLD and nearby properties; these zones would contain certain improvements that would serve the project. Local Law No. 7 provided that utilities and access ways, including emergency access ways, that served uses in the SLD could be placed on land outside the SLD without rezoning.
Town Law § 265 requires a supermajority vote of at least three fourths of the members of a town board to approve a zoning amendment when the board receives a written protest signed by "the owners of [20%] or more of the area of land immediately adjacent to that land included in such proposed change, extending [100] feet therefrom; or the owners of [20%] or more of the area of land directly opposite thereto, extending [100] feet from the street frontage of such opposite land" (Town Law § 265 [1] [b], [c]). The Court of Appeals has held that "[t]he 100 feet must be measured from the boundary of the rezoned area, not from the boundary line of the property in which the rezoned area is located" (Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306, 312 [2006]). Thus, it is permissible for property owners who seek rezoning to protect themselves from the supermajority requirement by creating a buffer zone at least 100 feet wide between the rezoned area and the property line (see id. at 315; Matter of Ferraro v Town Bd. of Town of Amherst, 79 AD3d 1691, 1693-1694 [2010], lv denied 16 NY3d 711 [2011]). Plaintiffs acknowledge that such buffer zones are permissible without regard to whether the owner created them intentionally to defeat the supermajority requirement (see Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d at 315). They further acknowledge that, when the 100-foot distance is measured from the boundaries of the SLD, their protest petitions did not include the signatures of the requisite percentage of owners of adjacent and opposing properties.[FN2] Nevertheless, they assert that a supermajority vote was required to pass Local Law No. 7 because it provides that certain improvements that serve only uses within the SLD and that are necessary to the use of the SLD may be located on land outside the SLD without rezoning, and the project plans submitted by defendants show that such improvements will be placed in buffer zones between the SLD and the properties of protesting landowners. Plaintiffs assert that these buffer zones do not satisfy the requirements of Town Law § 265, that the 100-foot distance should thus be measured from the buffer zones' boundaries rather than from the SLD, and that, when so measured, their petitions include the requisite percentage of protesting landowners to require a supermajority vote.
The planned improvements in the buffer zone would include access ways, utilities, storm water management facilities, berms, grading and landscaping, as well as an emergency access way required for the project by the New York State Fire Prevention and Building Code. This emergency access way would be created by improving and extending Keator Drive, which is now a Town road for part of its length and then becomes a private gravel road that serves as a driveway for two residential properties and, beyond those properties, is blocked by debris. The emergency access way would consist of a newly-constructed road sufficient to permit the passage of large emergency vehicles extending approximately 560 feet from the existing Town road across the buffer zone and into the SLD. Local Law No. 7 specifically permits this emergency access way, providing that "[a]ccess ways (and emergency access ways) to access the [SLD]
. . . from Keator Drive to serve the uses in the [SLD] will be allowed on land zoned other than [SLD]" (Code of the Town of Rotterdam § 270-260). A newly-created emergency turnaround area for large vehicles would also be constructed in the buffer zone area.
The question before this Court is whether a purported buffer zone that includes improvements that serve only uses in the rezoned area and are necessary to the planned use of the rezoned area satisfies the requirements of Town Law § 265. As of this writing, no New York court has directly addressed this issue. There is no indication that the buffer zones approved by the Court of Appeals in Matter of Eadie contained improvements that would serve uses in the rezoned area (Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d at 313-314). Likewise, it does not appear that improvements serving the rezoned area were located in the buffer zones approved in Ryan Homes, Inc. v Town Bd. of Town of Mendon (7 Misc 3d 709, 711-714 [Sup Ct, Monroe County 2005]). A subsequent case from the Fourth Department involved a buffer zone containing a public conservation area and driveways that provided access both to the rezoned area and the conservation area (Matter of Ferraro v Town Bd. of Town of Amherst, 79 AD3d at 1694). There, an administrative determination had been made that the driveways did not have to be rezoned because they served a dual purpose. The Fourth Department rejected the petitioners' contention that the driveways should have been rezoned on the ground that the petitioners had not exhausted their administrative remedies by appealing the administrative determination to the zoning board of appeals,[FN3] and added, without elaboration, that even if exhaustion was not required, the petitioners' contention lacked merit (id.). Unlike the circumstances presently before this Court, the planned uses of the buffer zone in Matter of Ferraro did not serve only the rezoned area, but also provided benefits to the general public.
At least two cases from other jurisdictions with statutory supermajority requirements have addressed buffer zones containing improvements that benefitted the use of a rezoned area. An Illinois court found that a proposed 30-foot-wide buffer zone that would contain 25-foot-wide access roads serving a rezoned area did not satisfy statutory supermajority requirements because the rezoned area and the buffer zone were "so intimately related and the uses thereof so mutually dependent" (Herrington v County of Peoria, 11 Ill App 3d 7, 12, 295 NE2d 729, 732 [1973]). However, the Illinois statute differed significantly from Town Law § 265 in that it did not specify a minimum distance that would constitute "a legally sanctioned buffer or barrier insulating the property from the claims of protestors" (id. at 13). Thus, we agree with the Court of Appeals that the rationale of the Illinois court in Herrington is not useful in analyzing Town Law § 265 (see Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d at 316).
An Arizona court rejected an argument by neighboring landowners that a buffer zone that satisfied statutory distance requirements was "illusory" because it would contain certain landscaping improvements and a public easement allowing access by residents of the area (Schwarz v City of Glendale, 190 Ariz 508, 511, 950 P2d 167, 170 [1997]). The court found that use of the rezoned area was not dependent upon these improvements and that the easement and landscaping were created for the benefit of neighboring landowners rather than for the rezoned area. However, the court noted in dicta "that the creation of the [b]uffer [z]one could not prevent the application of the super-majority requirement if the rezoned [area] could not be put to its intended use without also making use of the [b]uffer [z]one" (id.).
Here, it does not appear that the SLD can be used for its intended purpose without the Keator Drive emergency access way in the buffer zone, as the road — located at a certain minimum distance from other access ways — is required by the New York State Fire Prevention and Building Code.[FN4] Local Law No. 7 states that access ways and utilities located outside the rezoned area do not require rezoning because they "will continue to serve the existing golf course as well as the proposed new uses in the [SLD]." While it may be true that other access ways in the non-rezoned area have previously served the golf course, that does not appear to be true of Keator Drive, which is presently both private and impassable beyond the terminus of the Town road. Moreover, the project plans call for a gate that will block the emergency access way at the point of access; accordingly, it does not appear that the emergency access way will be available to provide access to the golf course — which, in any event, lies on the opposite side of the SLD — or to serve any purpose other than access to the SLD in emergencies. Likewise, the record does not reveal that the 30-foot-wide emergency turnaround, which will also be constructed in the buffer zone, serves any purpose other than use for the SLD.
Accordingly, the SLD cannot be used for its intended purpose without improvements in the buffer zone that will serve only uses in the SLD and will provide no public benefit. Under these circumstances, we do not find that the purported buffer zone is sufficient to defeat the supermajority requirements of Town Law § 265. Notably, in holding that the distance of a buffer zone from neighboring properties should be measured from the boundary of the rezoned area rather than that of the buffer zone, the Court of Appeals found that this statutory interpretation "is fair, because it makes the power to require a supermajority vote dependent on the distance of one's property from land that will actually be affected by the change" (Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d at 315 [emphasis added]). Here, land within the buffer zone will actually be affected by the rezoning in such a way that it would neither be fair nor consistent with the spirit and intent of Town Law § 265 to deprive neighboring landowners of the power to require a supermajority vote. We find that where, as here, a proposed buffer zone will contain improvements that benefit only the rezoned area and are necessary to the intended uses of the rezoned area, Town Law § 265 should be interpreted to require the 100-foot distance to opposing and adjacent properties to be measured from the boundary of the buffer zone rather than that of the rezoned area (compare Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d at 312; Matter of Ferraro v Town Bd. of Town of Amherst, 79 AD3d at 1693-1694; see also Schwarz v City of Glendale, 190 Ariz at 511, 950 P2d at 170). Plaintiffs have established that when the buffer zone containing the planned emergency access way and emergency turnaround is so measured, the adjacent and/or opposing properties of more than the requisite 20% of protesting landowners are within 100 feet of the property affected by the rezoning. Accordingly, approval of Local Law No. 7 by a supermajority vote of at least three fourths of the members of the Town Board was required and, as Local Law No. 7 was not approved by such a supermajority vote, it was not validly enacted.
Plaintiffs' remaining arguments are rendered academic by this determination.
Egan Jr., Clark, Mulvey and Colangelo, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, defendants' motions denied, and it is declared that Local Law No. 7 (2018) of the Town of Rotterdam is invalid.



Footnotes

Footnote 1: Plaintiffs later withdrew a third cause of action.

Footnote 2: In response to the protest petitions, which were signed by approximately 90 landowners, Lecce submitted the affidavit of the project's professional engineer, who averred that — when measured from the boundaries of the proposed SLD — the protestors owned only 10.22% of the immediately adjacent land and none of the directly opposite land. The Town Board accepted this opinion in rejecting the petitions.

Footnote 3: No legislative action was involved; the town board had approved a landowner's amended petition for rezoning and had not, as here, enacted an ordinance creating a new zoning classification.

Footnote 4: Storm water management facilities to be included in the buffer zone also apparently have no purpose other than serving uses within the SLD, but it is not clear whether the SLD could be put to its intended use without these facilities. The record does not reveal whether the remaining improvements, such as berms, grading and landscaping, are solely for the benefit of uses in the SLD or are necessary to permit its intended use.