Breitel, J.
In an action for a declaratory judgment, plaintiff St. Lawrence University appeals from an order of the Appellate Division, Third Department. The Theological School of St. Lawrence University discontinued operations in 1965 and plaintiff university instituted this action against defendant, the board of trustees of the Theological School, to determine the disposition of an estimated $1,000,000 in assets held by defendant board of trustees. These assets were derived from gifts, grants, and bequests made to plaintiff university for purposes of religious education which, since 1910, have been turned over to the Theological School by the university. Also incidentally at issue is the ownership of a parcel of land conveyed by the university to the Theological School in 1954 by a deed which specified that the property would revert to the university if it ceased to be used for a Theological School. Defendant board of trustees does not dispute plaintiff’s claim to ownership of this parcel.
With respect to the disposition of the $1,000,000 of assets held by defendant board, plaintiff university seeks a judgment declaring that the Theological School is only a “ department ” of the university and that, when it ceased operations, its assets reverted to the university. Defendant board argues that it has been a separate corporate entity since 1910 when it was “ divorced ” from the university and established as a body corporate by chapter 40 of the Laws of 1910. If the board is held to be a corporation, the parties agree that its dissolution must be ordered by the Regents and its property distributed pursuant to an order of the Supreme Court (Education Law, §§ 219, 220).
While the university and the board disagree as to the manner by which these assets should be distributed, both apparently concur that the property should be used only for “ religious education”. Thus, the university has passed a resolution directing that, in the event it is declared to be the holder of the assets, they will be held in perpetuity as a separate endowment fund and that “ all the income therefrom shall be used solely for religious education in such manner as the Court may approve”. On the other hand, if the board is a corporation, upon its dissolution, the Supreme Court would determine the *322 distribution of the corpus of the fund (as opposed to the income alone), presumably under cy pres principles.*
Defendant board moved to dismiss the complaint but the Supreme Court held for plaintiff university, concluding ‘ ‘ that the defendant [the board] is not a corporation”. Therefore, the board’s motion was denied and, as “ only questions of law [were] presented ”, the court, sua sponte, granted summary judgment to the university. The court also decreed that title in the real property previously conveyed by the university to the Theological School reverted to the university when the school ceased operations in 1965.
The Appellate Division reversed and granted the board’s motion to dismiss the complaint. While it stated that the board “ seems ” to be a corporation, the court held it was unnecessary to determine this issue as, under any circumstances, the university, under the 1910 amendment to the university charter, “ is not entitled to hold the assets involved in this proceeding ”. As for the real property, the Appellate Division said that its ownership could be determined “ in a proceeding pursuant to the Real Property Actions and Proceedings Law”. Two Justices dissented as to the dismissal of the complaint and agreed with the Supreme Court that the board was not a corporation, but only a department of the university. They concurred in the denial of summary judgment for the university, however, because the motion had not been supported by affidavit (CPLR 3212, subd. [b]).
It is concluded that the 1910 legislation endowed the board with sufficient corporate attributes to constitute it as a separate corporation and that, therefore, its $1,000,000 in assets do not revert to the university. Moreover, even though it was not demanded, the board is entitled to a declaratory judgment that it is a corporation. There is no necessity, however, for a separate proceeding to determine the ownership of the real property and the decision of the Supreme Court on this issue should be reinstated.
The university was chartered in 1856 and from then until 1910 it operated, among other schools, a liberal arts college and the *323 Theological School. During this period, the trustees of the university, who were then named by the New York State Convention of Universalists, wished to obtain grants from certain charitable foundations hut were handicapped by the policy of those foundations which barred gifts to institutions under sectarian control. To remove this obstacle, the university requested the Legislature in 1910 to amend its 1856 charter to provide that the control and management of the Theological School be vested in á separate board of trustees. The Legislature did so in the following statute, the interpretation of which is decisive of the present controversy:
"Section 1. Section four of chapter ninety-one of the laws of eighteen hundred and fifty-six, entitled ‘ An act to incorporate the St. Lawrence University and Theological Seminary,’ is hereby amended so as to read as follows;
“ § 4. Theological school. The corporation [the university] shall have power to establish a theological school, for the .Christian denomination called Universalists, as a separate department of said university and, when so established, shall thereafter maintain the same; such theological school shall have power to take and receive separate property, to hold the same for its maintenance and to conduct and administer the same for the purposes of theological education. The property, interests and affairs of such theological school shall be administered by a separate board of nine trustees, who shall be elected, in the first instance and from time to time as vacancies occur, by the executive board of the New York State Convention of Universalists. All separate property heretofore or hereafter received by said university for the uses, purposes and maintenance of theological education, shall forthwith be turned over by the trustees of said university to said separate board of nine trustees. Said separate board of nine trustees shall have power to sue and to he sued under the corporate name of the Trustees of the Theological School of the Saint Lawrence University, to appoint the faculty and the teachers of such theological school and to change the same, to adopt by-laws, to prescribe the courses of study, and to regulate the government and instruction of the students of such theological school. All powers not by this section conferred upon said separate hoard of trustees of the theological school are vested in the trustees of the Saint Lawrence University, who *324 are hereby empowered to fill any and all vacancies which may hereafter occur in their body.
■“ § 2. ¡Section five of said chapter ninety-one of the laws of eighteen hundred and fifty-six is hereby amended so as to read as follows:
“ § 5. President and teachers. The trustees of the university shall have power to appoint the president of the university, and the faculties and teachers thereof (except the faculty and teachers of the theological school) and to change the same, to adopt by-laws, to prescribe the courses of study, to regulate the government and instruction of the students except in the theological school, and to grant diplomas and confer degrees, which ¡shall entitle the holders to the privileges and immunities allowed by usage or statute to the possessors of like diplomas from other colleges of the state.
“ § 3. This act .shall take effect immediately. ’ ’
Pursuant to this statute, the university transferred to defendant board of trustees assets of the value of $189,259.36 previously received for the Theological School. Thereafter, any property received by the university which was to be used for purposes of theological education was turned over to the board. As the statute provided, during the 55-year existence of the board of trustees its members were elected and vacancies filled by the executive board of the State Convention of Universalista. Of particular importance, under the 1910 amendment the board was given the power “to sue and to be sued under the corporate name of the Trustees of the Theological School of the Saint Lawrence University ”.
'The board adopted .by-laws which, in several instances, refer to itself as the “ corporation As the 1910 legislation provided, the board had complete autonomy in the administration of the Theological School. This was also recognized in the university by-laws which specified that the Theological School ‘ ‘ is in no way subject to the control or direction ” of the university.
Defendant board, then, is a cognizable entity created by the Legislature with powers: to sue and be sued in a corporate name; receive and hold property for the purposes for which it was created; enact by-laws; .administer the Theological School; and to replenish its membership without terminating its existence (often referred to as the right of “ perpetual succession ”). *325 While it does not have all the powers normally held by a business corporation, it does have the essential attributes, and just about all the usual powers of a charitable corporation. Blackstone listed the attributes of a corporation as follows: the capacity of perpetual succession; the power to sue or be sued in the corporate name; to acquire or transfer property and do other acts in the corporate name; to purchase and hold real estate; to have a common seal; and to make by-laws for internal government (1 Blackstone’s Comm., pp. *475-*476; and see Thomas v. Dakin, 2-2 Wend. 9, 70-71 [stressing the importance of “perpetual succession ”]; 18 C. J. S., Corporations, § 1; 1 Fletcher’s Cyclopedia Corporations [Perm, ed.], § 5).
As will be noted, the 1910 statute vested the board with all of the rights and powers enumerated by Blackstone except a corporate seal and the right to convey property. And it has long been recognized that neither of these are essential corporate attributes (Thomas v. Dakin, supra, p. 70; 1 Fletcher’s Cyclopedia Corporations [Perm, ed.], §§ 9, 11, supra). Notably, it is no longer necessary to confer expressly the power to convey property or to possess a common seal -so long as otherwise a corporation has been created (General Corporation Law, § 14). Finally, in view of the fact that the board was given the essential corporate powers, it is immaterial that the 1910 legislation referred to the board as a “department” rather than as a corporation (Delaware & Hudson Co. v. Mechanicville & Fort Edward R. R. Co., 268 N. Y. 394, 399; People ex rel. Winchester v. Coleman, 133 N. Y. 279, 282).
The board, then, is a corporation and it is entitled to a declaratory judgment to that effect, even though it moved only to dismiss the complaint. Under these circumstances, the proper procedure for the court is to deny the motion to dismiss the complaint (thereby retaining jurisdiction of the controversy) and then to declare the rights of the parties, whatever they may be (Martin v. State Liq. Auth., 43 Misc 2d 682, 691, affd. on opn. below 15 N Y 2d 707; Lanza v. Wagner, 11 N Y 2d 317, 334, opp. dsmd. 371 U. S. 74; Rockland Light & Power Co. v. City of New York, 289 N. Y. 45, 51).
With respect to the real property claimed by plaintiff university, defendant board concedes that it now belongs to the university and points out, correctly, that it automatically *326 reverted to its grantor, tire university, when defendant board ceased to use it for purposes of theological education. Consequently, a separate action to achieve what defendant board concedes would be unnecessary.
Accordingly, the order of the Appellate Division should be reversed, without costs, the motion to dismiss denied, and judgment entered declaring that (1) defendant board of trustees is a corporation, and (2) the ownership of the real property involved reverted to plaintiff university when the parcel ceased to he used for purposes of theological education.
Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi and Bergan concur with Judge Breitel ; Judge Keating taking no part.
Order reversed, without costs, and matter remitted to the Supreme Court, Saratoga County, for further proceedings in accordance with the opinion herein.

 The New York State Convention of Universalista has instituted a separate ey pres proceeding involving these funds. Disposition of that action has beep held in abeyance pending this appeal.