OPINION OF THE COURT
William K. Nelson, J.
This is a CPLR article 78 proceeding in the nature of mandamus seeking an order of this court requiring respondents, Clarkstown Central School District and Superintendent Dr. John L. Krause (hereinafter collectively referred to as the District), to admit the infant plaintiff, Christie Lynch, to the Jesse Kaplan School without the immunizations mandated by Public Health Law § 2164. Supreme Court (Stolarik, J.) considered petitioners’ and respondents’ papers, originally submitted on an order to show cause for a preliminary injunction, as a motion for summary judgment. Summary judgment was denied, and the court ordered a hearing to be held.
Hearings were held at which both petitioners and respondents presented expert testimony and other evidence on the issue of whether petitioners are entitled to the relief requested. The entire history of the litigation on this, petitioners’ third request seeking to have Christie admitted without immunizations, is worth noting here.
I.
On September 7, 1990, petitioners sent a letter to the District requesting a religious exemption from the mandatory immunization requirements for Christie. On September 14, the District responded with a letter and questionnaire requesting additional information about petitioners’ religious beliefs. Petitioners completed the questionnaire, which was in the form of an affidavit, and in answer to question number 11 denied that they were seeking a medical exemption from immunizations. On September 19, the District denied petitioners’ request for a religious exemption in a letter from respondent Krause.
Petitioners next sought to obtain a medical exemption for Christie by presenting a note, exhibit B in evidence, from Dr. Pavel Yutsis. This request was denied by the District’s Chief Medical Officer on September 28, 1990, and on October 26, petitioners submitted their second claim for a religious exemption stating that they were now members of the Congregation of Universal Wisdom. The District again denied their request.
*848 In November 1990 petitioners sought a temporary restraining order against the District, in connection with a complaint filed in the United States District Court for the Southern District of New York, on First Amendment grounds, seeking enforcement of their right to free exercise of religion and asking for a preliminary injunction. The District Court (Brieant, Ch. J.) denied the TRO and held a hearing on the preliminary injunction beginning in December 1990. Judge Brieant denied petitioners’ claim for injunctive relief and dismissed the petition on the merits, on factual grounds, while at the same time citing constitutional infirmities with the statute, Public Health Law § 2164. He also declined to exercise pendant jurisdiction over petitioners’ State law claim of a medical exemption under Public Health Law §2164 (8). It is that claim that is now before the court.
Christie Lynch is a six-year-old child who has been diagnosed with Rett Syndrome. The syndrome in girls who are afflicted with it, including Christie, results in severe multiple disabilities. Christie cannot walk or speak and has no control over bladder or bowel functions. Her level of cognitive functioning as reported by a psychological evaluation in May of 1990 was at that of a SVz- to 5-month-old child, and her social development was reported at the four- to eight-month-old level. She received one dose of oral polio vaccine at approximately three months of age, and shortly thereafter was hospitalized and was diagnosed with viral syndrome. She has not received any other immunizations. Petitioners attribute the onset of her present condition to the administration of the oral polio vaccine. Christie presently receives home instruction provided by the District, although professional evaluations have shown she would benefit from a structured special educational environment such as that available through the Jesse Kaplan School. Christie has been refused admittance to the school because of petitioners’ refusal to comply with the mandatory immunization requirements of Public Health Law § 2164.
Following the District’s denial of petitioners’ first claim for a religious exemption, petitioners provided the District with a seven-line note, written on a prescription pad, signed by Dr. Pavel Yutsis, which stated, "To whom it may concern: This is to certify that Christie Lynch has been under my care for Rett Syndrome, a progressive neurological disorder with danger of dysphagia. It is my opinion that all vaccinations are contraindicated indefinitely.”
*849 Section 2164 (8) of the Public Health Law provides an exemption from the mandatory immunization requirements, stating, "If any physician licensed to practice medicine in this state certifies that such immunization may be detrimental to a child’s health, the requirements of this section shall be inapplicable until such immunization is found no longer to be detrimental to the child’s health.” In the present action, petitioners claim that in applying section 2164 the District may look no further than the face of Dr. Yutsis’ "certificate,” since he is a physician licensed to practice in New York. The District, on the other hand, argues that the statute itself does not define conditions that would be detrimental to a child’s health. It relies on the New York State Department of Health’s interpretation of section 2164 of the Public Health Law, and the corresponding regulation promulgated at 10 NYCRR 66-1.3, as requiring a school district to further scrutinize a "certificate” when the certificate fails to contain details contraindicating the administration of a vaccination "in accordance with accepted medical standards.” (See, exhibit K to Finkelstein Affirmation in Opposition, July 10,1991.)
II.
At the outset, it is clear that there are no procedural barriers to this court’s jurisdiction to decide this controversy on the merits, since, while petitioners could have sought review of the District’s decision by way of a formal appeal to the Commissioner of Education, that method of review is not mandatory or exclusive, nor does the failure of petitioners to seek such review preclude review of the District’s decision by the courts in an article 78 proceeding. (Matter of Coughlan v Cowan, 21 Misc 2d 667 [Sup Ct, Suffolk County 1959].) The court also notes that there are no reported cases in New York interpreting the medical exemption component of Public Health Law § 2164, nor has our research uncovered any reported cases in the United States dealing with a similar issue.
In deciding this case on the merits the court must examine the basis upon which the District made its decision, to determine whether that decision was arbitrary and capricious or an abuse of discretion, or whether it was founded on a rational basis. Under this limited standard of review, if the District’s decision was founded on a rational basis, this court’s review of the matter must end. In undertaking this analysis the court *850 will assess the District’s decision on both a procedural and substantive level.
III.
It is clear from the testimony at the hearing and the voluminous exhibits submitted in evidence that procedurally the District did not act in an arbitrary or capricious manner. After receiving petitioners’ request for a medical exemption, the District referred the matter to its Chief Medical Officer. This step was squarely in accord with the Department of Health’s internal interpretations of the regulation implementing Public Health Law § 2164 found at 10 NYCRR 66-1.3, as cited above, which provide that the determination of whether a medical certificate is in conformity with the statute should be made by a (medical) practitioner. (See, exhibit K to Finkelstein Affirmation in Opposition, July 10, 1991.) The District’s Chief Medical Officer, Dr. Richard King, then spoke with Dr. Yutsis, the author of the "certificate” provided by petitioners. He learned that Dr. Yutsis specialized in "ecology,” an area of specialization not approved by the State Board of Regents. He also undertook a review of the medical literature on Rett Syndrome to determine whether any contraindications to immunization of a child suffering from the syndrome had been published, and wrote to Dr. Alan Percy, Director of the Rett Center at Baylor College of Medicine in Houston, Texas. Dr. Percy replied that immunizations were not contraindicated in Rett children. Dr. King also spoke to medical specialists in pediatric neurology who agreed that there were no reasons not to immunize a child with Rett Syndrome. Dr. King was also aware that Dr. William Bernstein, Christie’s regular pediatrician, had given his approval for Christie to receive all immunizations in September of 1990. Based on these findings, the District denied petitioners’ request for a medical exemption for Christie.
The procedure followed here by the District was neither an arbitrary and capricious one, nor an abuse of discretion. The court rejects petitioners’ argument that the District was required to accept the note from Dr. Yutsis at face value, without further investigation. At that stage, the District was following the regulation promulgated by the State Department of Health discussed above, as outlined in an internal memorandum prepared by its general counsel. That memorandum reviewed a letter to school officials, which provided *851 guidelines for interpreting physician statements submitted in support of a medical exemption to immunization. The memorandum advises that a "health provider’s statement that administration of vaccine is medically contraindicated for nonspecific reasons is not sufficient to serve as a medical exemption.” The memorandum further states, "The medical exemption under P.H.L. section 2164 is available only when a vaccination would actually be detrimental to a student’s health during that period and not because the student has a note from a physician excusing the student from immunization. A medical certification must, therefore, contain sufficient information to identify the contraindication to immunization and identify the time at which vaccination would no longer be detrimental.” Thus, faced with contradictory opinions from two physicians who had treated Christie, and viewing Dr. Yutsis’ "certificate” as failing to conform with Department of Health guidelines, the District properly requested its Chief Medical Officer to review the matter, which he did in a thorough and competent manner.
IV.
Turning next to the factual and substantive basis for the District’s denial of a medical exemption to petitioners, the court heard expert testimony on behalf of petitioners and the District as to whether immunizations were contraindicated in children suffering from Rett Syndrome, and more particularly in Christie’s case.
Petitioners called Marjorie Ordene, M.D., who has practiced medicine since 1982. Dr. Ordene is not board certified in any field, but a significant part of her practice is in pediatrics, dealing with children who are mentally retarded or neurologically impaired. She examined Christie Lynch twice, the first time on March 11, 1992. Christie is the only Rett Syndrome child she has examined. Her opinion that immunizations are contraindicated in Christie’s case is based on her belief that the risk to Christie would be greater than the benefits to her and other children. In Dr. Ordene’s opinion, the risks to Christie include the possibility of vaccine-induced upper-respiratory symptoms, which are difficult for Christie to deal with because of the already heavy upper-respiratory secretions that she has, and because of her history of breathholding, or apnea. Her opinion is based, in part, on the opinions of Dr. Yutsis and Dr. Kay Lawrence and on Christie’s medical history, *852 provided by petitioners, which indicates that Christie has petit mal seizures. Dr. Ordene states that vaccinations may cause seizures, and thus would be contraindicated in Christie’s case.
Dr. Ordene admits that the American Academy of Pediatrics does not consider Rett Syndrome a contraindication to immunization. Significantly, during the course of her testimony, Dr. Ordene changed her opinion to state that she believed that Christie should be immunized against measles because of the recent epidemic of the disease and because Christie’s siblings are unimmunized and thus present a risk of bringing measles into the household. Dr. Ordene’s opinion was that Christie could be at risk of death if she contracted measles.
Dr. Pavel Yutsis also testified on behalf of petitioners. Dr. Yutsis practices in the areas of pediatrics, clinical ecology, allergy and immunization. He is not board certified in any field of medicine. He has seen Christie seven or eight times, and she is the only Rett Syndrome child in his practice. He first saw Christie in 1990, but he is not Christie’s primary physician. Dr. Yutsis reviewed the medical records from Christie’s hospitalization in 1985 and concluded that she had viral meningitis or viral syndrome, which was related to a single dose of oral polio vaccine. He is not aware of any reported cases in medical literature of oral polio vaccine causing viral meningitis. At the time he wrote his opinion that Christie should not be immunized, he believed that all immunizations should be postponed to investigate her immunological status. He presently believes that Christie should be immunized against infectious diseases that have an outbreak in the United States. For example, she should be immunized against measles, and if there is an outbreak of mumps, she should then be immunized against mumps. In Dr. Yutsis’ opinion, however, Christie should not be routinely immunized because of the increased risk of respiratory infection, which he believes could be fatal to her.
He admits that in the literature on Rett Syndrome he has found no contraindications to immunization. In this regard he agrees with the written opinion of Dr. Alan Percy. Nevertheless, there are still some circumstances under which he believes Christie should not be immunized. For example, since the American Academy of Pediatrics states that neurologically impaired children should not be immunized with the pertussis part of DPT, he might consider administering DT in place of diphtheria and pertussis. Even then, he would proceed cau *853 tiously in Christie’s case. He found nothing in the results of blood tests done on Christie to show that she has a depressed immune system. He has recommended to Christie’s parents that she receive antiseizure medication, but she is not receiving any.
The District called its Chief Medical Officer, Dr. Richard King. Dr. King related his involvement with the District’s decision to deny petitioners’ request for a medical exemption and his recommendation that the exemption be denied as discussed above. He also testified that he reviewed the medical records of Christie’s hospitalization in 1985, and that it is clear that Christie had viral syndrome, not meningitis. He confirmed that there are no documented cases of oral polio vaccine causing meningitis. He also testified that, contrary to petitioners’ belief, there is no causal relationship between meningitis and Rett Syndrome. Although Rett Syndrome is classified as being of unknown etiology, the medical opinions indicate that it is a genetic disorder.
Dr. King also testified that Christie’s autoimmune system is competent, and that the benefits of immunization far outweigh the risks in a seizure-prone child.
Respondents also called petitioner, Dr. James Lynch. He admitted that in the Federal court action he testified that he had decided to pursue a medical exemption as an interim measure while pursuing the religious exemption, because it (his opposition to immunization) is primarily a religious belief, "not a medical one.”
Further testimony on behalf of respondents was provided by Dr. Guthrie Birkhead, Director of the State Immunization Program in the Bureau of Communicable Disease Control in the New York State Department of Health. Dr. Birkhead is board certified in internal medicine and preventive medicine, and has a Master’s degree in public health. He testified that measles, as well as mumps, diphtheria, pertussis, and rubella, are highly contagious airborne diseases, and that the recent rise in the number of measles cases is directly related to the failure of vaccination. Presently New York State requires immunization for measles, diphtheria, polio, mumps, rubella, and Haemophilus influenza B for admission into school.
Dr. Birkhead researched the Rett Syndrome literature to determine the nature of the disease and whether immunizations would be contraindicated in a child diagnosed with the syndrome. He also spoke to physicians at the Rett Center, *854 including Dr. Percy. He learned nothing to indicate that such a child should not be immunized. In addition, he learned that those children might actually be at greater risk if they acquired the disease of measles, so it would be imperative to immunize them against measles.
It is his opinion that the document submitted by Dr. Yutsis on behalf of petitioners was inadequate, because it did not sufficiently specify the reasons why the immunizations would be contraindicated or the time period when they would be contraindicated. He described the Department of Health’s interpretation of section 2164 of the Public Health Law and the regulations promulgated thereunder. According to that interpretation, the purpose of investigating a medical exemption to determine if it is legitimate is to prevent the law from being circumvented, and to insure the highest possible immunization levels in school age children. In his opinion, Dr. Yutsis’ note does not provide a valid contraindication for immunization as specified by the Immunization Advisory Committee of the United States Public Health Service and the American Academy of Pediatrics.
Finally, respondents called Dr. Alan Percy, Director of the Rett Center. Dr. Percy is board certified in pediatrics and child neurology and did residencies in pediatrics and child neurology at Stanford and Johns Hopkins. Through his association with the Rett Center, Dr. Percy has seen approximately 500 Rett children in the United States and abroad. In his opinion and, according to his testimony, that of other experts in the field, Rett Syndrome is a genetic disorder. He is not aware of any evidence linking Rett Syndrome to the administration of oral polio vaccine, nor of any causal relationship between viral meningitis or viral syndrome and the occurrence of Rett Syndrome.
He examined Christie Lynch for about 90 minutes. He took a medical history and did a physical examination of her. From his examination he would classify Christie as "in the middle” in terms of all the Rett children he has seen, having neither a more nor less severe case than the average.
The Rett Center has also performed studies of reported seizure activity in Rett children. They have concluded, as a result of correlating EEGs with observations of what appear to be mild seizure-like behavior, that the vast majority of these patients do not have seizures. They exhibit nodding-off or blanking-out behaviors, sometimes associated with petit mal *855 seizures, which are actually just another manifestation of Rett Syndrome, with no electrical activity in the brain to indicate that seizures are occurring. In 1,750 hours of recording, they have only recorded about a dozen clinical seizures.
He reviewed the medical reports from Christie’s hospitalization in 1985 and found no evidence there of a connection between the oral polio vaccine and her development of Rett Syndrome. In his opinion, Christie should be immunized against mumps, measles, rubella, diphtheria and polio. He believes the risk to her if she should contract the diseases is greater than that of a so-called normal child. She might have some mild symptomology that is associated with various vaccinations, such as discomfort at the site of the shot, mild swelling or inflammation, local pain and tenderness, or low grade fever and flu-like symptoms. However, the vaccinations would not produce the same risk to her that the native infection would be likely to produce. He has taken into account the possibility that she might have a seizure, and still concludes that she should be immunized. In his experience, other children with Rett Syndrome are routinely immunized, and he has not observed any adverse effects in these children.
On rebuttal, petitioners called Richard Smith, head of the Bureau of Disease Prevention and Control of the Rockland County Department of Health. Mr. Smith testified that the records of the Department of Health indicate that in 1991 there were 43 reported cases of measles in the county, 12 in 1990, and none to date in 1992.
After considering all of the testimony and other evidence presented in the course of this hearing, the court finds that the District’s decision was founded on a sufficient rational basis, and was not arbitrary or capricious. At the time it initiated its medical review, the District had ample evidence to support its position that the note provided by Dr. Yutsis was inadequate to uphold the medical exemption requested by petitioners. On its face, it required further investigation which the District properly undertook through its Chief Medical Officer. At the time the request was denied, the District had before it the Medical Officer’s recommendation, which was based not only upon his own opinion formed through independent study of the literature of Rett Syndrome, but also the opinion of Dr. Percy, a recognized expert in the clinical study of Rett children. Both of these sources revealed that there is no known contraindication to immunizing a child with Rett Syndrome. The District possessed, as well, the opinion of *856 Christie’s personal pediatrician that she could be immunized. In contrast, petitioners had presented, up to that time, only the handwritten note on a prescription pad from Dr. Yutsis, a physician with no particular credentials in the field of Rett disorder.
Nor is petitioners’ position enhanced by further evidence submitted at the hearing. The testimony of Dr. Ordene adds little to petitioners’ case, since she freely admits that she has no special expertise in dealing with Rett children, and that her opinion is based in part on the opinion of Dr. Yutsis. The court also notes that petitioners’ own experts both testified at the hearing that they were of the opinion that, at the very least, Christie should be immunized against measles.
The District, on the other hand, presented testimony from Dr. Percy who has seen over 500 Rett children in his practice, and who personally examined Christie. Respondents also presented the testimony of Dr. Birkhead, who testified that the Department of Health regulations implicitly require a medical exemption to be based on recognized contraindications to immunizations, related with specificity to the particular exemption requested. To permit otherwise would undermine the statute itself as well as its purpose of achieving the highest level of immunization possible in school age children, in order to prevent the spread of these deadly diseases. Since there is no medically recognized contraindication to immunizing Rett children, the District’s decision was rationally based and cannot be deemed arbitrary or capricious.
Based on the foregoing, the relief requested in the petition is denied. The District will not be required to admit Christie to school until petitioners comply with the mandates of Public Health Law § 2164.