Matter of Kerri W.S. v Zucker (2021 NY Slip Op 07349)





Matter of Kerri W.S. v Zucker


2021 NY Slip Op 07349


Decided on December 23, 2021


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, TROUTMAN, AND WINSLOW, JJ.


636 CA 20-00854

[*1]IN THE MATTER OF KERRI W.S., PSYD., AND CARL J.S., JR., J.D., M.A., INDIVIDUALLY AND ON BEHALF OF THEIR MINOR SON T.S., PETITIONERS-PLAINTIFFS-RESPONDENTS,
v
HOWARD ZUCKER, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF HEALTH OF STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF HEALTH, RESPONDENTS-DEFENDANTS-APPELLANTS, ET AL., RESPONDENTS-DEFENDANTS. 






LETITIA JAMES, ATTORNEY GENERAL, ALBANY (DUSTIN J. BROCKNER OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS. 
PATRICIA FINN ATTORNEY, P.C., NANUET (PATRICIA FINN OF COUNSEL), FOR PETITIONERS-PLAINTIFFS-RESPONDENTS. 


NeMoyer, J.
 Appeal from an order of the Supreme Court, Yates County (Daniel J. Doyle, J.), entered April 24, 2020 in a CPLR article 78 proceeding and declaratory judgment action. The order, among other things, denied in part the motion of respondents-defendants-appellants to dismiss the petition-complaint against them. 
It is hereby ORDERED that the order so appealed from is modified on the law by granting the motion insofar as it sought to dismiss pursuant to CPLR 3211 (a) (7) the petition-complaint against respondents-defendants-appellants except with respect to the claim challenging 10 NYCRR 66-1.1 (l) on legislative delegation grounds and granting judgment in favor of respondents-defendants-appellants as follows:
It is ADJUDGED AND DECLARED that 10 NYCRR 66-1.1 (l) does not violate the separation of powers doctrine or otherwise exceed the regulatory powers of its promulgator;
and as modified the order is affirmed without costs.
Opinion by NeMoyer, J.:
The legislature has determined that vaccines save lives. It has therefore established a mandatory "program of immunization . . . to raise to the highest reasonable level the immunity of the children of the state against communicable diseases" (Public Health Law § 613 [1] [a]). And by promulgating 10 NYCRR 66-1.1 (l), respondents-defendants-appellants (defendants) merely implemented the legislature's policy in a manner entirely consistent with the legislative design. We therefore hold that 10 NYCRR 66-1.1 (l) is valid, does not violate the separation of powers doctrine, and does not exceed the authority of its promulgator.
I
"[T]he elimination of communicable diseases through vaccination [is] 'one of the greatest achievements' of public health in the 20th century" (Bruesewitz v Wyeth LLC, 562 US 223, 226 [2011]). Indeed, "routine vaccination is 'one of the most spectacularly effective public health initiatives this country has ever undertaken' " (id. at 245 [Breyer, J., concurring]).
Take measles — one of the diseases at issue in this case. The statistics are sobering. "[P]rior to the vaccine, measles killed seven to eight million children each year [across the world]" (F.F. v State of New York, 194 AD3d 80, 86 n 3 [3d Dept 2021], appeal dismissed and lv denied 37 NY3d 1040 [2021] [emphasis added]). Children were not the only victims of measles; in fact, measles is believed to have killed up to one-third of Hawaii's entire population in the 1850s (see Stanford Shulman et al., The Tragic 1824 Journey of the Hawaiian King and Queen to London: History of Measles in Hawaii, 28:8 Pediatric Infectious Disease Journal 728 [2009]). Thanks to the overwhelming success of the vaccine, however, measles was deemed eradicated from the United States in the year 2000 (see F.F., 194 AD3d at 82), and only 73,400 people worldwide — of any age — are thought to have died from measles in 2015 (see Global Burden of Disease Study 2015, 388 Lancet 1459 [2016]).
And the smallpox vaccine actually banished that dreaded disease from the face of the earth altogether. As the Centers for Disease Control and Prevention (CDC) explains, "the last natural outbreak of smallpox in the United States occurred in 1949. In 1980, the World Health Assembly declared smallpox eradicated . . . , and no cases of naturally occurring smallpox have happened since."
"But these gains are fragile" (Bruesewitz, 562 US at 246 [concurrence]). Starting "in the 1970's and 1980's vaccines became, one might say, victims of their own success. They had been so effective in preventing infectious diseases that the public became much less alarmed at the threat of those diseases" (id. at 226 [majority opinion of Scalia, J.]). And the development of effective policy interventions for those who resist vaccination has flummoxed officials ever since organized opposition to vaccines first took root in the "apathy or ignorance[ of] millions" (L 1968, ch 1094 § 1; see generally Bruesewitz, 562 US at 227-230 [majority], 246-248 [concurrence]).
Mandatory child vaccination statutes are among the most common policy responses to vaccine resistance (see Sean Coletti, Taking Account of Partial Exemptors in Vaccination Law, Policy, and Practice, 36 Conn L Rev 1341, 1341 and n 2 [2004]). According to an early survey of the topic, "[v]accination has been compulsory in England since 1854, and the . . . 1898 [statute] requires every child born in England to be vaccinated within six months of its birth. [Vaccination] became compulsory in Bavaria in 1807; Denmark, 1810; Sweden, 1814; Würtemberg, Hesse, and other German states, 1818; Prussia, 1835; Roumania, 1874; Hungary, 1876; and Ser[b]ia, 1881" (Matter of Viemeister, 179 NY 235, 240 [1904]). In New York, the first mandatory child vaccination statute was enacted in 1860 (see id. at 237, citing L 1860, ch 438 [page 761]). Today, all parents in New York are required to vaccinate their children against certain specified diseases (see Public Health Law § 2164 [2]), and no unvaccinated child may attend any school or day care, public or private, for more than 14 days (see § 2164 [7] [a]).
The rationale for mandatory child vaccination statutes is well established. " '[T]he causative agents for . . . preventable childhood illnesses are ever present in the environment, waiting for the opportunity to attack the unprotected individual' " (Bruesewitz, 562 US at 246 [concurrence]) and, as the events of the past 24 months have demonstrated, "vaccines are effective in preventing outbreaks of disease only if a large percentage of the population is vaccinated" (id. at 227 [majority] [emphasis added]). "Even a brief period when vaccination programs are disrupted can lead to children's deaths" (id. at 246 [concurrence]).
The danger of failing to maintain herd immunity is no idle concern. For example, starting "in the fall of 2018, a nationwide measles outbreak occurred that was largely concentrated in communities in Brooklyn and Rockland County with 'precipitously low immunization rates' " (F.F., 194 AD3d at 82; see C.F. v New York City Dept. of Health & Mental Hygiene, 191 AD3d 52, 56-57 [2d Dept 2020]). It is commonly accepted that the 2018 measles outbreak was fueled by sub-herd immunity rates traceable to a statutory provision — Public Health Law § 2164 former (9) — that had allowed parents to exempt their children from otherwise mandatory vaccinations on religious grounds (see C.F., 191 AD3d at 56-58, 71). The legislature reacted decisively to the recent measles outbreak by repealing the religious exemption outright (see L 2019, ch 35, § 1 [repealing subdivision (9) of Public Health Law § 2164]), and the Third Department rejected a constitutional challenge to the repeal of the religious exemption (see F.F., 194 AD3d at 89).
The only remaining exception to the mandatory child vaccination statute is the so-called [*2]medical exemption (see Public Health Law
§ 2164 [8]). The medical exemption provides: "If any physician licensed to practice medicine in this state certifies that such immunization may be detrimental to a child's health, the requirements of [the mandatory vaccination statute] shall be inapplicable until such immunization is found no longer to be detrimental to the child's health" (id. [emphasis added]). The statute does not define the phrase "may be detrimental to a child's health."
Following the repeal of the religious exemption, defendants — exercising their statutory authority to "adopt and amend rules and regulations to effectuate the provisions and purposes of [the mandatory vaccination statute]" (Public Health Law § 2164 [10]) — enacted a package of regulatory amendments designed to ensure the appropriate use of medical exemptions going forward. Within that package was a new regulatory provision that defined the phrase "may be detrimental to a child's health" in Public Health Law § 2164 (8) to mean that "a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care" (10 NYCRR 66-1.1 [l]).[FN1]
II
Petitioners-plaintiffs (plaintiffs) enrolled their son, T.S., in a school for disabled students operated by respondents-defendants Monroe One BOCES, Fairport and Mark Frenzel, in his official capacity as principal of that school (respondents). In October 2019, after the effective date of 10 NYCRR 66-1.1 (l), plaintiffs submitted four certifications from T.S.'s physician to the school's principal that purported to medically exempt T.S. from a particular vaccine mandated by Public Health Law § 2164 (2) (b). The certifications, however, did not state that the subscribing physician had "determined that [T.S.] has a medical contraindication or precaution to a specific immunization," nor that such a determination would be "consistent with ACIP guidance or other nationally recognized evidence-based standard of care" (10 NYCRR 66-1.1 [l]). The school's medical director therefore determined — after seeking additional information from T.S.'s physician — that T.S. was not entitled to a medical exemption under Public Health Law § 2164 (8). Citing the medical director's determination, the principal then rejected plaintiffs' proffered medical exemption certifications and effectively barred T.S. from the school as required by section 2164 (7) (a).
Plaintiffs thereafter filed the instant lawsuit. Notably, both the parties and Supreme Court have consistently characterized plaintiffs' lawsuit as a hybrid declaratory judgment action and CPLR article 78 proceeding. The petition-complaint (complaint) sets forth an array of allegations that we will examine in greater detail below. In lieu of answering, defendants moved to dismiss the complaint against them pursuant to, inter alia, CPLR 3211 (a) (7). There is no indication in the record, however, that defendants ever sought a declaration in their favor on any issue.
The court issued a written order addressing defendants' motion to dismiss, among other things. As relevant here, the court construed the complaint to challenge two specific regulations (10 NYCRR 66-1.1 [l] and 10 NYCRR 66-1.3 [c]) on a theory of improper legislative delegation, i.e., a claim that the regulations exceeded defendants' regulatory authority, violated the separation of powers doctrine, and unconstitutionally usurped the legislature's exclusive prerogative to make difficult policy decisions on contested issues. Applying the Court of Appeals' settled framework for analyzing legislative delegation challenges, Supreme Court held that 10 NYCRR 66-1.3 (c) did not transgress defendants' proper regulatory domain and thus was not invalid [FN2]. Conversely, the court held that plaintiffs had stated a cognizable legislative [*3]delegation challenge to 10 NYCRR 66-1.1 (l). The court therefore granted defendants' motion insofar as it sought under CPLR 3211 (a) (7) to dismiss plaintiffs' purported challenge to 10 NYCRR 66-1.3 (c), but it denied defendants' motion insofar as it sought under CPLR 3211 (a) (7) to dismiss plaintiffs' challenge to 10 NYCRR 66-1.1 (l). The court issued no declarations in its order, and because the merits of plaintiffs' legislative delegation challenge to 10 NYCRR 66-1.1 (l) was left for future adjudication, there is no dispute that the order did not finally determine the
hybrid action/proceeding.
Defendants now appeal from the non-final order, purportedly as of right. On appeal, defendants argue that the court's legislative delegation analysis regarding 10 NYCRR 66-1.1 (l) was fundamentally flawed, and they ask us to declare that 10 NYCRR 66-1.1 (l) does not unconstitutionally exceed their regulatory authority or otherwise violate the separation of powers doctrine. Defendants also ask us to declare that 10 NYCRR 66-1.3 (c) does not unconstitutionally exceed their regulatory authority or otherwise violate the separation of powers doctrine. For the reasons that follow, we agree with defendants as to 10 NYCRR 66-1.1 (l), but we decline to issue any declaration as to 10 NYCRR 66-1.3 (c).
III
Several procedural considerations require our attention at the outset.
A
The first procedural difficulty arises from the fact that defendants are purporting to appeal as of right from an interlocutory order entered in a hybrid CPLR article 78 proceeding and declaratory judgment action. And while interlocutory orders are often appealable as of right in declaratory judgment actions (see CPLR 5701 [a] [2]), they are never appealable as of right in article 78 proceedings (see CPLR 5701 [b] [1]). That dichotomy calls into question the appealability of the order now before us.
The applicability of the CPLR 5701 (b) (1) bar, and by extension defendants' right to take this appeal, turns initially on whether the underlying lawsuit is properly classified as a declaratory judgment action, an article 78 proceeding, or both (see Matter of Allstate Life Ins. Co. v Superintendent of Ins. of State of N.Y., 99 AD2d 278, 280 [1st Dept 1984], affd 64 NY2d 962 [1985]). If the lawsuit is properly classified as a declaratory judgment action only or an article 78 proceeding only, then the statutory text instantly resolves the appealability dilemma. Conversely, if the lawsuit is properly classified as a true hybrid action/proceeding, then defendants' right to appeal hinges on whether they are seeking review of a determination related to the declaratory judgment component of the case or the article 78 component of the case (see Allstate Life Ins. Co., 99 AD2d at 280; Matter of Yorktown Smart Growth v Town of Yorktown, 168 AD3d 957, 958 [2d Dept 2019]; Matter of Hart v Town Bd. of Town of Huntington, 114 AD3d 680, 680-682 [2d Dept 2014], lv denied 24 NY3d 908 [2014]).
Discerning the true nature of the underlying lawsuit and its relationship to the instant appeal is not a simple inquiry, however. The complaint fails to assert discrete, non-duplicative, and legally cognizable causes of action that succinctly identify the governmental action being challenged, the governmental actor responsible for that action, the precise legal theory animating the challenge, the statutory vehicle by which that challenge is asserted, or the specific relief sought. Although the complaint purports to assert two separate causes of action, a review of their respective paragraphs reveals overlapping theories and allegations that defy neat compartmentalization, and the prayer for relief neither references the purported causes of action nor tracks the complaint in any other sense.
The complaint can be translated into justiciable claims only after isolating the specific governmental actions to which plaintiffs object, linking each such action to a specific defendant or respondent, discerning the gravamen of plaintiffs' objection to each challenged action, and thereupon applying well-established legal principles to determine whether the claims as thus formulated are best characterized as declaratory claims, article 78 claims, or both (see generally Matter of Grocholski Cady Rd., LLC v Smith, 171 AD3d 102, 107-108 [4th Dept 2019]). Upon performing that review, we can identify only two discrete governmental actions to which plaintiffs assert any cognizable challenge: (1) defendants' promulgation of 10 NYCRR 66-1.1 (l), which in plaintiffs' view is facially invalid because it exceeds defendants' regulatory authority, violates the separation of powers doctrine, and usurps the legislature's prerogative; and (2) respondents' rejection of plaintiffs' proffered medical exemption certifications, which plaintiffs claim was arbitrary, capricious, and done in violation of lawful procedure. Plaintiffs' first claim, i.e., their facial challenge to the validity of 10 NYCRR 66-1.1 (l), is properly raised only in a declaratory judgment action (see Matter of Carney v New York State Dept. of Motor Vehs., 133 AD3d 1150, 1151 n [3d Dept 2015], affd 29 NY3d 202 [2017]; Matter of Spence v Shah, 136 AD3d 1242, 1243 n 2 [3d Dept 2016]). By contrast, plaintiffs' second claim, i.e., their challenge to respondents' rejection of their proffered medical exemption certifications, is properly raised in an article 78 proceeding (see C.F., 191 AD3d at 64-71; Matter of Lynch v Clarkstown Cent. School Dist., 155 Misc 2d 846, 847, 856 [Sup Ct, Rockland County 1992]).
Consequently, at a high level of generality, this lawsuit is properly characterized as a true hybrid article 78 proceeding and declaratory judgment action. After all, it makes both declaratory and article 78 claims. The lawsuit, however, is not a hybrid as against any particular defendant or respondent. As against defendants, the lawsuit is a declaratory judgment action only; as against respondents, it is an article 78 proceeding only. It follows that the article 78 component of this hybrid case is not at issue on this appeal because the article 78 claim is not asserted against the appealing parties, i.e., defendants. Rather, this appeal necessarily involves only the declaratory claim asserted against the appealing parties (again, defendants). Thus, because this appeal involves only the declaratory side of a hybrid lawsuit, the CPLR 5701 (b) (1) bar does not apply (see Allstate Life Ins. Co., 99 AD2d at 280; Hart, 114 AD3d at 680-682). Defendants' as-of-right appeal, which is otherwise proper under CPLR 5701 (a) (2) (iv), is therefore retained (see Allstate Life Ins. Co., 99 AD2d at 280; cf. Yorktown Smart Growth, 168 AD3d at 958).
B
The next procedural issue is the propriety of defendants' appellate request for declarations notwithstanding their failure to seek declarations in the motion court. Ordinarily, an appellate request for affirmative relief not sought below would be unpreserved, and we would not reach it except under certain limited circumstances. For the reasons that follow, however, we have both the power and the duty within the unique context of a CPLR 3211 (a) (7) motion in a declaratory judgment action to declare the rights of the parties in appropriate circumstances notwithstanding their failure to seek such relief below.
In a non-declaratory case, a motion to dismiss under CPLR 3211 (a) (7) generally assesses only "whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). If so, the motion is denied and the case proceeds toward final adjudication. In declaratory judgment actions, however, CPLR 3211 (a) (7) empowers a court to grant judgment on the pleadings notwithstanding the absence of a motion for summary judgment (see Boryszewski v Brydges, 37 NY2d 361, 365 [1975]; St. Lawrence Univ. v Trustees of Theol. School of St. Lawrence Univ., 20 NY2d 317, 325 [1967]). As the Court of Appeals explained, upon "determin[ing] that the case is properly one for declaratory relief, the court may properly proceed, on a motion to dismiss [under CPLR 3211 (a) (7)] in an action for a declaratory judgment, to a consideration of the . . . plaintiff's claims on the merits" (Boryszewski, 37 NY2d at 365), and to thereupon immediately "declare the rights of the parties, whatever they may be" (St. Lawrence Univ., 20 NY2d at 325).
The utility of this procedure in declaratory judgment actions, which has existed since at least 1937 (see Dun & Bradstreet, Inc. v City of New York, 276 NY 198, 206-207 [1937]), lies in its promotion of judicial economy. As the Second Department wrote in a 1957 case, perhaps "orderly procedure should require the service of answers, and [the making of] appropriate [*4]motions" in declaratory cases, but courts are nevertheless "reluctant . . . to compel the [parties] to resort to . . . unnecessary procedure[s where the] conceded facts are before [the court] now, as fully and as completely as though answers had been served and appropriate motions for affirmative judgments had been made" (Civil Serv. Forum v New York City Tr. Auth., 4 AD2d 117, 129-130 [2d Dept 1957], affd 4 NY2d 866 [1958]).
Because CPLR 3211 (a) (7) does double duty in declaratory judgment actions as both a facial sufficiency screening mechanism and an accelerated-judgment mechanism, a motion to dismiss a declaratory claim under that provision must be analyzed in three steps (see generally Matter of Jacobs v Cartalemi, 156 AD3d 635, 637-638 [2d Dept 2017], lv denied 32 NY3d 903 [2018]; Plaza Dr. Group of CNY, LLC v Town of Sennett, 115 AD3d 1165, 1166 [4th Dept 2014]; Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150-1151 [2d Dept 2011]). At the first step, the "only question is whether a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment, and not whether [any party] is entitled to a [particular] declaration" (County of Monroe v Clough Harbour & Assoc., LLP, 154 AD3d 1281, 1282 [4th Dept 2017] [internal quotation marks omitted]). If the answer to that question is no — for example, where the complaint is "so imprecise and its allegations so inexactly stated that . . . it fails to state an identifiable cause of action . . . on which declaratory relief may be granted, [in] either [party's] favor" (Boryszewski, 37 NY2d at 368) — then the CPLR 3211 (a) (7) motion should be granted, the complaint dismissed, and no declaration issued (see e.g. Boryszewski, 37 NY2d at 368; McFadden v Schneiderman, 137 AD3d 1618, 1619 [4th Dept 2016]; Nasa Auto Supplies v 319 Main St. Corp., 133 AD2d 265, 266 [2d Dept 1987]). Conversely, if the answer to the step-one question is yes, i.e., "where [the relevant] cause of action is sufficient to invoke the court's power to render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy" (Jacobs, 156 AD3d at 637 [internal quotation marks omitted]), then the inquiry moves to step two.
At step two, the question is whether factual issues preclude a summary determination of the parties' rights (see Dodson v Town Bd. of the Town of Rotterdam, 182 AD3d 109, 112 [3d Dept 2020]). If yes, then the CPLR 3211 (a) (7) motion is denied, no declaration is made at that juncture, and the case continues on its ordinary course (see Dodson, 182 AD3d at 112; see e.g Sonne v Board of Trustees of Vil. of Suffern, 67 AD3d 192, 203 and n 1 [2d Dept 2009]). If, however, "there are no questions of fact and the only issues presented are questions of law or statutory interpretation" (Dodson, 182 AD3d at 112), then the inquiry moves to step three.
At step three, the court denies the CPLR 3211 (a) (7) motion in order to "retain[] jurisdiction of the controversy," and it then immediately "declare[s] the rights of the parties, whatever they may be" (St. Lawrence Univ., 20 NY2d at 325). In other words, at step three, the court effectively "treat[s]" the motion to dismiss for failure to state a cause of action "as a motion for a declaration" and proceeds accordingly (Plaza Dr. Group of CNY, LLC, 115 AD3d at 1166; see Fekishazy v Thomson, 204 AD2d 959, 962-963 and n 2 [3d Dept 1994], appeal dismissed 84 NY2d 844 [1994], lv denied 84 NY2d 812 [1995]). For these purposes, the caselaw's occasional reference to a "motion for a declaration" is just shorthand for a "motion for judgment on the pleadings," a procedural device that was explicitly recognized by the former Civil Practice Act and that remains a fixture of federal practice (see Fed Rules Civ Pro rule 12 [c]; see generally Chavez v Occidental Chem. Corp., 35 NY3d 492, 497 n 1 [2020], rearg denied 36 NY3d 962 [2021]).
The motion court has "exceedingly broad discretion" at step three to "declare the rights and legal relations of the parties," and a party "will not . . . be denied [an appropriate declaration] merely because he does not ask for [the declaration] to which he might be entitled" (Cahill v Regan, 5 NY2d 292, 298 [1959] [internal quotation marks omitted]; see Rivera v Russi, 243 AD2d 161, 166 [1st Dept 1998]). Indeed, the motion court's power at step three follows the case to the Appellate Division and even to the Court of Appeals, both of which "could . . . and very properly [do]" issue declarations in eligible cases even when the parties "did not claim such a right in their complaint or urge it upon the [lower court]," and irrespective of whether the CPLR 3211 (a) (7) motion was granted or denied below (Cahill, 5 NY2d at 298; see Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 621 n 4 [2018]; Brown v State of New York, 144 AD3d 88, 91 [4th Dept 2016]; New Yorkers for Constitutional Freedoms v New York State Senate, 98 AD3d 285, 288, 297 [4th Dept 2012], lv denied 19 NY3d 814 [2012]).
Applying the three-step framework here leads us to conclude that defendants are entitled to a declaration as to the validity of 10 NYCRR 66-1.1 (l), but not as to the validity of 10 NYCRR 66-1.3 (c). At step one, plaintiffs' legislative-delegation challenge to 10 NYCRR 66-1.1 (l) is "sufficient to invoke the court's power to render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy" (Jacobs, 156 AD3d at 637 [internal quotation marks omitted]; see e.g. Garcia, 31 NY3d at 606-617, 621 and n 4 [adjudicating a legislative delegation challenge to an administrative vaccine mandate]). Conversely, to the extent that the complaint could be read to challenge any other regulation (such as 10 NYCRR 66-1.3 [c]), or to challenge 10 NYCRR 66-1.1 (l) on any ground except improper legislative delegation, any such challenge would be "so imprecise and its allegations so inexactly stated that . . . it [would] fail[] to state an identifiable cause of action . . . on which declaratory relief may be granted[ in] either [party's] favor" (Boryszewski, 37 NY2d at 368; see McFadden, 137 AD3d at 1619). Thus, while plaintiffs' legislative delegation challenge to 10 NYCRR 66-1.1 (l) states a cause of action and moves on to step two of the analysis, the complaint against defendants fails to state a cause of action in any other respect and is subject to summary dismissal to that extent.
At step two, it is undisputed that plaintiffs' legislative delegation challenge to 10 NYCRR 66-1.1 (l) does not implicate any material factual disputes. We thus arrive at step three, which requires us to uphold the court's denial of defendants' motion insofar as it sought to dismiss plaintiffs' legislative delegation challenge to 10 NYCRR 66-1.1 (l) under CPLR 3211 (a) (7), and to thereupon declare the rights of the parties on that particular issue.
IV
Fashioning the appropriate declaration at step three is, of course, the "merits" of this case, i.e., whether 10 NYCRR 66-1.1 (l) exceeds defendants' regulatory authority and thereby unconstitutionally usurps the legislature's prerogative to set policy on contested social issues. We now reject plaintiffs' legislative delegation challenge to 10 NYCRR 66-1.1 (l).
The separation of powers inherent in our tripartite form of government bars the legislative branch from "delegat[ing] all of its law-making powers to the executive branch" (Boreali v Axelrod, 71 NY2d 1, 9 [1987] [emphasis added]). The constitutional proscription against improper legislative delegation has never been applied in New York with the rigor found at the federal level and in other states, however, for it is well established that "there has never been in this state that sharp line of demarcation between the functions of the three branches of government which obtains in some other jurisdictions" (Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co., 191 NY 123, 134 [1908]).
The "modern view" of legislative delegation theory, explained Judge Titone in Boreali (71 NY2d at 10), comes from Matter of Levine v Whalen (39 NY2d 510, 515-516 [1976]):
"Because of the constitutional provision that '[t]he legislative power of this State shall be vested in the Senate and the Assembly' (NY Const, art III, § 1), the Legislature cannot pass on its law-making functions to other bodies . . . , but there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to [the executive branch] to administer the law as enacted by the Legislature . . . The delegation of power to make the law, which necessarily involves a discretion as to what it shall be, cannot be done, but there is no valid objection to the conferring of authority or discretion as to a law's execution, to be exercised under and in pursuance of it.
"The Legislature may constitutionally confer discretion upon [the executive branch] only if it limits the field in which that discretion is to operate and provides standards to govern its exercise. This does not mean, however, that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program. The standards or guides need only be prescribed in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules . . . Indeed, in many cases, the Legislature has no alternative but to enact [*5]statutes in broad outline, leaving to [executive] officials enforcing them the duty of arranging the details . . . More to the point, it is not always necessary that . . . legislation prescribe a specific rule of action and, where it is difficult or impractical for the Legislature to lay down a definite and comprehensive rule, a reasonable amount of discretion may be delegated to the [executive] officials."
The Court of Appeals has consistently applied Levine's formulation of legislative delegation theory in the ensuing decades (see e.g. Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 259-261 [2018]; Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 221 [2017]; Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004]; Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 169 [1993], cert denied 512 US 1213 [1994]). In its most recent treatment of the topic, the high Court explained that: (1) "[a]dministrative agencies . . . are permitted to adopt regulations that go beyond the text of [their] enabling legislation, so long as those regulations are consistent with the statutory language and underlying purpose" (Matter of Juarez v New York State Off. of Victim Servs., 36 NY3d 485, 491 [2021] [internal quotation marks omitted]); and (2) an agency's delegated rulemaking, if "reasonably designed to further the regulatory scheme, . . . cannot be disturbed by the courts unless it is arbitrary, illegal or runs afoul of the enabling legislation or constitutional limits . . . regardless of our assessment of the wisdom of the agency's approach" (id. at 492-493 [internal quotation marks omitted]). And while there are four so-called " 'coalescing circumstances' " that "may inform the [legislative delegation] inquiry" (LeadingAge N.Y., Inc., 32 NY3d at 260-261, quoting Boreali, 71 NY2d at 11 [emphasis added]), "these are not 'criteria that should be rigidly applied in every case' but rather 'overlapping, closely related factors' that, viewed together, may signal that an agency has exceeded its authority" (id. at 261, quoting Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d 681, 696 [2014] [emphasis added]).
Ultimately, the dispositive questions in every legislative delegation analysis are whether "the agency has been empowered to regulate the matter in question" and whether the agency has "usurped the legislative prerogative" (id.). So long as the first question is answered in the affirmative and the second question is answered in the negative, "the separation of powers inquiry is at an end" and the challenged provision must be upheld (id.).
Here, exercising their legislatively conferred power to "adopt and amend rules and regulations to effectuate the provisions and purposes of [the mandatory child vaccination statute]" (Public Health Law § 2164 [10]), defendants adopted a regulation (10 NYCRR 66-1.1 [l]) that merely defines a phrase ("may be detrimental to a child's health") that appears in, but is not defined by, the operative statutory text (Public Health Law § 2164 [8]). The definition set forth in the regulation is entirely consistent with the statutory text, and it operates simply to align the statutorily designated eligibility criteria for medical exemptions with generally accepted medical paradigms. In other words, the regulation forecloses medical exemptions based on anything other than a "nationally recognized evidence-based standard of care" (10 NYCRR 66-1.1 [l]). The regulation will thereby necessarily decrease the number of unvaccinated children, and that plainly advances the legislative goal of implementing "a program of immunization . . . to raise to the highest reasonable level the immunity of the children of the state against communicable diseases" (§ 613 [1] [a] [emphasis added]).
There is no legislative delegation claim under these circumstances. As the Court of Appeals has repeatedly held in materially indistinguishable cases, a regulatory agency does not transgress the limits of its delegated authority or otherwise trespass upon the legislative prerogative simply by exercising its explicit power to define an otherwise undefined statutory term in a manner that is consistent with the statutory text, that harmonizes with the overall statutory scheme, and that undeniably furthers the legislature's articulated policy goals (see Juarez, 36 NY3d at 491-495; Rent Stabilization Assn. of N.Y. City, 83 NY2d at 168-170; Matter of New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292, 305-306 [1988]; see also Consolidated Edison Co. of N.Y. v City of New Rochelle, 140 AD2d 125, 131-133 [2d Dept 1988]). Indeed, the specific holding of Juarez can be applied directly here merely by transposing the challenged provision: "Because [Public Health Law § 2164 (8) limits the availability of medical exemptions to vaccines that 'may be detrimental to a child's health'] but is silent with regard to the parameters of what ['may be detrimental to a child's health'], the legislature [*6]necessarily granted [defendants] the authority to determine the scope of that term. In other words, the definition of the term ['may be detrimental to a child's health'] was left to [defendants'] discretion" (36 NY3d at 493). Given Juarez's squarely controlling holding and rationale, we need not mechanistically apply each Boreali factor seriatim in order to ascertain the validity of 10 NYCRR 66-1.1 (l).
Supreme Court's three rationales for concluding otherwise cannot bear scrutiny. First, the court found it significant that the New York Legislature had not followed the California Legislature's lead in codifying the substantive standard of 10 NYCRR 66-1.1 (l). To our mind, however, the legislative enactments or non-enactments of a sister state have no bearing on a legislative delegation challenge to a New York regulation. In any event, "[l]egislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences" (Acevedo, 29 NY3d at 225 [internal quotation marks omitted]), and legislative inaction is entitled to virtually no weight at all where, as here, the legislature has specifically authorized the implementing agency to enact comprehensive interstitial regulations consistent with the legislative purpose (see Public Health Law § 2164 [10]). The affirmative grant of interstitial regulatory authority itself explains why the legislature did not codify the substantive standard of 10 NYCRR 66-1.1 (l) — there was no practical need to do so in light of the agency's interstitial regulatory power.
Second, the court noted that the college-student vaccination statute (Public Health Law § 2165 [8]) contains some language similar to 10 NYCRR 66-1.1 (l), and it thus reasoned that the absence of similar language from the child vaccination statute (§ 2164 [8]) demonstrates that the legislature intended to exclude the substantive standard of 10 NYCRR 66-1.1 (l) from the ambit of section 2164. The court's reasoning, however, overlooks the key fact that section 2165 was enacted over 20 years after section 2164 (compare L 1989, ch 405, § 1 with L 1966, ch 994, § 1), and the legislature's inclusion of more specific language in section 2165 actually validates defendants' subsequent decision to adopt a consistent definition of the cognate provision in section 2164. Far from frustrating the legislative will, defendants' exercise of their interstitial regulatory authority to align the interpretation of an undefined phrase in section 2164 with the legislature's definition of that same phrase in the subsequently enacted section 2165 only reinforced the legislative will.
Third, the court reasoned that 10 NYCRR 66-1.1 (l) constituted a "comprehensive set of rules" written on a "blank slate" that should have been enacted by the legislature in order to satisfy the demands of tripartite government. On that point, the court simply misapprehended the regulation and the regulatory context; the "comprehensive set of rules" at issue were written by the legislature in the form of Public Health Law § 2164, and the regulatory provision at issue — 10 NYCRR 66-1.1 (l) — merely defined a key phrase selected by the legislature in that "comprehensive set of rules." Such a definitional regulation is the very embodiment of proper interstitial rule making (see e.g. Juarez, 36 NY3d at 491-495). In short, there was no "blank slate" here, and the court erred in finding otherwise.
CONCLUSION
Accordingly, the order should be modified by granting defendants' motion insofar as it sought pursuant to CPLR 3211 (a) (7) to dismiss the complaint against defendants except with respect to plaintiffs' claim challenging 10 NYCRR 66-1.1 (l) on legislative delegation grounds and granting judgment in favor of defendants as follows: It is ADJUDGED AND DECLARED that 10 NYCRR 66-1.1 (l) does not violate the separation of powers doctrine or otherwise exceed the regulatory powers of its promulgator.
All concur except Smith, J.P. and Carni, J., who concur in the result only.
Entered: December 23, 2021
Ann Dillon Flynn
Clerk of the Court



Footnotes

Footnote 1: ACIP is the CDC's "Advisory Committee on Immunization Practices" (10 NYCRR 66-1.1 [f] [1]).

Footnote 2: 10 NYCRR 66-1.3 (c) says that "[a] principal . . . shall not admit a child to school unless [his or her] parent[] . . . has furnished the school with . . . [a] signed, completed medical exemption form approved by the [State Health Department] or NYC Department of Education from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to a specific immunization and specifying the length of time the immunization is medically contraindicated. The medical exemption must be reissued annually. The principal . . . may require additional information supporting the exemption."