Grand S. Point, LLC v Bassett (2024 NY Slip Op 03364)

Grand S. Point, LLC v Bassett

2024 NY Slip Op 03364

Decided on June 20, 2024

Appellate Division, Third Department

Mackey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 20, 2024

CV-23-0159

[*1]Grand South Point, LLC, Doing Business as The Grand Rehabilitation and Nursing at South Point, et al., Appellants,
v
Mary T. Bassett, as Commissioner of Health, et al., Respondents.

Calendar Date:April 23, 2024

Before: Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Mackey, JJ.

Harter Secrest & Emery LLP, Rochester (F. Paul Greene of counsel), for appellants.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondents.

Mackey, J.
(1) Appeal from an order of the Supreme Court (Peter A. Lynch, J.), entered December 16, 2022 in Albany County, which granted defendants' motion to dismiss the amended complaint, and (2) motion to strike plaintiffs' reply brief.
In 2021, the Legislature enacted Public Health Law § 2828, titled "Residential health care facilities; minimum direct resident care spending," which limits the ways nursing homes in New York can spend their revenues (L 2021, ch 57, part GG, § 1).[FN1]
Public Health Law § 2828 creates a spending mandate, which requires that, "[b]eginning on and after January [1, 2022], every residential health care facility shall spend a minimum of [70%] of revenue on direct resident care, and [40%] of revenue shall be spent on resident-facing staffing" (Public Health Law § 2828 [1] [a]). The spending mandate further requires that
"[15%] of costs associated with resident-facing staffing contracted out by a facility for services provided by registered professional nurses or licensed practical nurses . . . or certified nurse aides . . . shall be deducted from the calculation of the amount spent on resident-facing staffing and direct resident care" (Public Health Law § 2828 [1] [b]).[FN2]

Defendant Commissioner of Health is directed to "promulgate regulations governing the disposition of revenue in excess of expenses for residential health care facilities" (Public Health Law § 2828 [1] [a]) as the law caps nursing home profits at "[5%] of total operating and non-operating expenses" (hereinafter the excess-revenue cap) (Public Health Law § 2828 [1] [c] [i]). The Commissioner is also directed to "deposit such recouped funds into the nursing home quality pool" (Public Health Law § 2828 [1] [c] [i]), which is a stream of funds "to be funded at the discretion of the [C]ommissioner" to "facilitat[e] quality improvements" in residents' healthcare (Public Health Law § 2808 [2-c] [d]).[FN3] Funds deposited into the quality pool are reinvested into nursing homes that comply with certain minimum standards (see 10 NYCRR 86-2.42). The statute further provides the Commissioner with the authority to make regulations implementing the quality pool, although such regulations must be "developed in consultation with the nursing home industry and advocates" (Public Health Law § 2808 [2-c] [d]). The Commissioner may, however, "waive the requirements of [Public Health Law § 2828] on a case-by-case basis [when] a nursing home . . . demonstrates . . . that it experienced unexpected or exceptional circumstances that prevented compliance" (Public Health Law § 2828 [4]). Finally, Public Health Law § 2828 states that the "[C]ommissioner shall issue regulations, seek amendments to the state plan for medical assistance, seek waivers from the federal Centers for Medicare and Medicaid Services, and take such other actions as reasonably necessary to implement this section" (Public Health Law § 2828 [5]).
On November 17, 2022, the Commissioner adopted a regulation, 10 NYCRR 415.34, to implement the provisions of Public Health Law § 2828, including the spending mandate and the excess-revenue cap, which applied retroactively to April 1, 2022. The regulation provides:
"By January 1, 2022, residential health care facilities shall comply with the following minimum expenditures:
(1) 70[%] of revenue shall be spent on direct resident care; and
(2) 40[%] of revenue shall be spent on resident-facing staffing.
(i) All amounts spent on resident-facing staffing shall be included as a part of amounts spent on direct resident care; and
(ii) 15[%] of costs associated with resident-facing staffing that are contracted out by a facility for services provided by registered professional nurses, licensed practical nurses, or certified nurse aides shall be deducted from the calculation of the amount spent on resident-facing staffing and direct resident care" (10 NYCRR 415.34 [d] [1]-[2]).
The regulation further provides for recoupment by the Commissioner of "excessive total operating revenue" where "the facility's total operating revenue exceeds total operating and non-operating expenses by more than five percent of total operating revenue" or
"the facility fails to spend the minimum amount necessary to comply with the minimum spending standards for resident-facing staffing or direct resident care, as set forth in subdivision (d) of this Section, as calculated on an annual basis, or for 2022, on a pro-rata basis for April 1, 2022 through December 31, 2022" (10 NYCRR 415.34 [e] [1]).
The regulation dictates that in the event of noncompliance:
"(i) [The Commissioner] shall issue a notice of noncompliance to a facility subject to recoupment for excessive total operating revenue, which indicates the amount to be remitted based on the amount of excess revenue or the difference between the minimum spending requirement and the actual amount of spending on resident-facing staffing or direct care staffing, as applicable, as well as acceptable forms of payment.
(ii) Upon receipt of a notice of noncompliance pursuant to subparagraph (i), the facility shall remit the total amount indicated in the notice of noncompliance by November first in the year following the year in which the expenses are incurred" (10 NYCRR 415.34 [e] [2]).
Penalties for failure to remit the total required fee under the regulation by the due date "includ[e] but [are] not limited to" a lawsuit by the Department of Health (hereinafter DOH), "deductions or offsets from payments made pursuant to the Medicaid program, and imposition of penalties pursuant to Section 12 of the Public Health Law" (10 NYCRR 415.34 [e] [3]). Funds recouped by DOH under the regulation "shall be deposited by the [Commissioner] into the [quality pool], pursuant to Section 2808 (2-c) (d) of the Public Health Law" (10 NYCRR 415.34 [e] [4]).
The regulation also clarifies the waiver provision of Public Health Law § 2828, indicating what information a waiver applicant must provide:
"[a] facility may apply to the Commissioner for a waiver of applicability of this Section on the basis of unexpected or exceptional circumstances that prevented compliance. Such application shall detail the specific unexpected or exceptional circumstance experienced by the facility; when the facility first learned of such circumstances; why the facility could not have anticipated such circumstances arising; actions the facility took to address such circumstances; expenses incurred as a result of addressing such circumstances; when the facility expects such circumstances to be resolved; and what preventive steps the facility is taking to ensure that such circumstances do not unexpectedly arise in the future. The Commissioner shall have discretion to approve or reject applications submitted pursuant to this paragraph, and shall provide the facility with the basis for the Commissioner's determination within a reasonable timeframe upon receipt of a complete application" (10 NYCRR 415.34 [c] [2]).
In determining whether to grant or deny a waiver application based on unexpected or exceptional circumstances, factors the Commissioner will assess include, but are not limited to "whether the facility should have anticipated such events occurring"; "whether any other residential health care facilities licensed by [DOH] experienced similar circumstances but have not applied for a waiver under this paragraph"; and "whether the facility has implemented sufficient policies and procedures to ensure such events do not recur" (10 NYCRR 415.34 [c] [2] [i]-[iii]). Furthermore, "[f]or the purposes of assessing whether a facility has met the minimum spending requirements, a facility may apply to the Commissioner to have certain revenues and expenses excluded from the calculation of the facility's total revenue and total expenditures," provided that the facility demonstrates to the Commissioner that the revenues and expenses were incurred due to "a natural disaster, where a federal, State, or local declaration of emergency has been issued" or "the facility has received extraordinary, non-recurring revenue which, in the discretion of the Commissioner, does not accurately reflect operating revenue for the purposes of this rule, including but not limited to revenue received through insurance or legal settlements" (10 NYCRR 415.34 [d] [3]). The regulation also provides a list of facilities excluded from the term "residential health care facilities" as used in the regulation (10 NYCRR 415.34 [c] [1]; see 10 NYCRR 415.34 [b]).
In September 2022, plaintiffs — 130 nursing homes, also known as "residential health care facilities," located in and licensed by the state — filed an amended complaint against the Commissioner and defendant Director of the Budget, seeking, among other things, a declaration that Public Health Law § 2828 was unconstitutional on its face and as applied to plaintiffs (see CPLR 3001).[FN4]
[FN5] Plaintiffs have participated at all relevant times and continue to participate in the Medicaid and Medicare programs. Specifically, plaintiffs seek declarations that Public Health Law § 2828: (1) was an unconstitutional delegation of legislative authority under the NY Constitution; (2) violated a separate and earlier enacted statute, Public Health Law § 2807 (3), which requires the Commissioner to certify that Medicaid reimbursement rates are "reasonable and adequate"; (3) violated the Equal Protection clauses of the Federal and State Constitutions by unfairly singling out nursing homes for regulation; (4) violated both substantive and procedural due process rights by "taking" Medicare or private pay payments; and (5) violated the Excessive Fines Clause of both the Federal and State Constitutions. In addition to a declaratory judgment invalidating Public Health Law § 2828, plaintiffs sought counsel fees under 42 USC § 1988. Defendants filed a pre-answer motion to dismiss the amended complaint, arguing that plaintiffs' facial challenges to Public Health Law § 2828 failed to state a cause of action and that their as-applied challenges were not ripe for review.
Following defendants' reply and oral argument, Supreme Court dismissed the amended complaint. Supreme Court concluded that, to the extent plaintiffs challenged the facial constitutionality of Public Health Law § 2828, their claims were ripe. However, the court concluded that plaintiffs' claim that Public Health Law § 2828 violated Public Health Law § 2807 (3) was unripe because "[a]t this juncture . . . there is no factual basis in the record to determine whether [Public Health Law § 2828] will impact reimbursement rates." Supreme Court dismissed plaintiffs' remaining claims for failure to state a cause of action (see CPLR 3211 [a] [7]). Plaintiffs appeal.
Initially, defendants move to strike plaintiffs' reply brief for raising two arguments for the first time in reply — to wit, (1) that Public Health Law § 2828 creates a tax on nursing homes, and (2) that it is not budget neutral. It is well settled that new claims or arguments cannot be raised for the first time in a reply brief (see Matter of Colihan v State of New York, 211 AD3d 1432, 1435 [3d Dept 2022]; Church of St. Francis De Sales v McGrath, 200 AD3d 1267, 1269 n 3 [3d Dept 2021]). Here, however, we find that both arguments defendants seek to strike are "permissible responses" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1209 [3d Dept 2020]) to defendants' argument in their responsive brief that this Court's decision in Matter of Dry Harbor Nursing Home v Zucker (175 AD3d 770 [3d Dept 2019], lv dismissed & denied 35 NY3d 984 [2020]) is controlling here. As a result, this Court will consider plaintiffs' arguments on reply and denies defendants' motion to strike (see Reed v New York State Elec. & Gas Corp., 183 AD3d at 1209).
Before analyzing the procedural and substantive issues, a brief recitation of the statutory framework is required. Medicaid is a joint federal and state health insurance program established under Title XIX of the Social Security Act (42 USC § 1396 et seq.) designed to provide medical assistance to certain needy individuals. States may elect to participate, and those states that do are reimbursed in part by the federal government for costs incurred under the program. DOH is responsible for administering New York's Medicaid program (see Social Services Law § 363-a; Public Health Law § 201 [1] [v]). Under Public Health Law §§ 2807 and 2808, DOH sets the reimbursement rates for nursing homes based on a complex calculation of a facility's allowable costs in a given year, known as the "base year" (see generally 10 NYCRR 86-2.10 [procedures for calculating base rate]; 10 NYCRR 86-2.17 [defining "[a]llowable costs"]). In subsequent years, known as "rate years," DOH adjusts the base-year costs to account for changes in a facility's mix of patient conditions and care needs, inflation and certain other factors (see 10 NYCRR 86-2.11-86-2.13). Nursing homes are notified of the reimbursement rate they will be receiving on a per patient, per day basis in advance of the year in which the rate will apply (see e.g. Public Health Law § 2807 [7]). Public Health Law § 2807 (3) does not require that the reimbursement rate will "cover every nursing home's actual costs" (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 546 [2006]). Rather, the reimbursement rates must be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). As part of the New York Medicaid program, there exists the "nursing home quality improvement" program, under which a pool of funds (the quality pool) is established by imposing Medicaid rate reductions on eligible nursing homes (Public Health Law § 2808 [2-b] [c]; see Public Health Law § 2808 [2-c] [d]; 10 NYCRR 86-2.42 [c]). The funds from the quality pool are redistributed to eligible nursing homes based on the quality of care provided to patients (see 10 NYCRR 86-2.42 [b], [d]).
Within this statutory framework, we address plaintiffs' facial challenges to Public Health Law § 2828 and begin with the rules governing this common procedural setting. It is well settled that
"[i]n a civil action, a motion to dismiss pursuant to CPLR 3211 (a) (7) requires the court to give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference, and to dismiss the pleading if, upon that analysis, it fails to state a cause of action" (Dodson v Town Bd. of the Town of Rotterdam, 182 AD3d 109, 112 [3d Dept 2020] [internal quotation marks and citations omitted]).
"Specifically, with regard to a pre-answer motion to dismiss a declaratory judgment action, the only issue presented for consideration is whether a cause of action for declaratory relief is set forth, not whether the plaintiff is entitled to a favorable declaration" (Matter of Dashnaw v Town of Peru, 111 AD3d 1222, 1225 [3d Dept 2013] [internal quotation marks, ellipsis and citations omitted]). Upon such a motion, "a court may reach the merits of a properly pleaded cause of action for a declaratory judgment where no questions of fact are presented by the controversy" (North Oyster Bay Baymen's Assn. v Town of Oyster Bay, 130 AD3d 885, 890 [2d Dept 2015] [internal quotation marks, brackets and citations omitted]). "Under such circumstances, the motion to dismiss the cause of action for failure to state a cause of action should be taken as a motion for a declaration in the defendant's favor and treated accordingly" (Minovici v Belkin BV, 109 AD3d 520, 524 [2d Dept 2013] [internal quotation marks and citations omitted]; see Dodson v Town Bd. of the Town of Rotterdam, 182 AD3d at 112).
"[L]egislative enactments are entitled to a strong presumption of constitutionality, and courts strike them down only as a last unavoidable result after every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible. Thus, while the presumption of constitutionality is not irrefutable, as the part[ies] challenging a duly enacted statute, plaintiffs face the initial burden of demonstrating [Public Health Law § 2828's] invalidity beyond a reasonable doubt. Moreover, as the part[ies] mounting a facial challenge to [Public Health Law § 2828], plaintiffs bear the substantial burden of demonstrating that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment" (White v Cuomo, 38 NY3d 209, 216 [2022] [internal quotation marks, brackets and citations omitted]).
Plaintiffs first argue that the Legislature unconstitutionally delegated its lawmaking authority to the Commissioner insofar as it grants the Commissioner vast and unfettered discretion regarding how to use the funds deposited into the quality pool (see NY Const, art III, § 1). We are unpersuaded. "The legislative power of this state [is] vested in the senate and assembly" (NY Const, art III, § 1), but the Legislature can "assign by law new powers and functions to departments, officers, boards, commissions or executive offices of the governor" (NY Const, art V, § 3). "The Legislature may constitutionally confer discretion upon an administrative agency . . . if it limits the field in which that discretion is to operate and provides standards to govern its exercise" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d 505, 517 [2023] [internal quotation marks and citation omitted]; see Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d 174, 179-180 [2016]). "The separation of powers doctrine requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (Matter of LeadingAge N.Y., Inc. v Shah, 153 AD3d 10, 16 [3d Dept 2017] [internal quotation marks, brackets and citations omitted], affd 32 NY3d 249 [2018]).
Here, plaintiffs are correct that the Commissioner's limiting regulations cannot "cure an unlawful delegation of legislative power by adopting in [their] discretion a limiting constructing of [a] statute" (Whitman v American Trucking Assns., Inc., 531 US 457, 472 [2001]). Nevertheless, the Legislature set a standard, albeit a vague one, for the spending of quality funds; they must be used to "facilitat[e] quality improvements in residential health care facilities" (Public Health Law § 2808 [2-c] [d]). This Court has previously found that standard sufficient for that provision to survive challenge on nondelegation grounds (see Matter of Dry Harbor Nursing Home v Zucker, 175 AD3d at 773-774), and such decision fits comfortably within this Court's and the Court of Appeals' permissive nondelegation doctrine (see e.g. Matter of Levine v Whalen, 39 NY2d 510, 516 [1976]; Matter of Shattenkirk v Finnerty, 97 AD2d 51, 54 [3d Dept 1983], affd 62 NY2d 949 [1984]). And although it is true that more money — whatever the amount — will likely be deposited into the quality pool once Public Health Law § 2828 begins to be enforced, there remains a standard that the Commissioner must obey; she does not simply have "open-ended discretion" to do as she pleases (Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d 681, 696 [2014] [internal quotation marks and citations omitted]). Thus, we conclude that the statute does not unconstitutionally delegate legislative power to the Commissioner.
Plaintiffs also contend that Public Health Law § 2828 violates Public Health Law § 2807 (3), the latter of which requires that Medicaid rates be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). We find, however, that Supreme Court correctly concluded that the alleged conflict between Public Health Law §§ 2807 (3) and 2828 is unripe for judicial review. "A determination as to whether a controversy is ripe for review requires a court first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied" (Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 130 [3d Dept 2022] [internal quotation marks and citations omitted]).
"The appropriateness inquiry looks to whether the administrative action being reviewed is final and whether the controversy may be determined as a purely legal question. The concept of finality requires an examination of the completeness of the administrative action and a pragmatic evaluation of whether the decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" (id. at 131 [internal quotation marks and citations omitted]).
"The hardship prong, from the standpoint of the challenging party, entails an examination of the certainty and effect of the harm claimed to be caused by the administrative action: whether it is sufficiently direct and immediate and whether the action's effects have been felt in a concrete way. If the anticipated harm is insignificant, remote or contingent, the controversy is not ripe" (id. [internal quotation marks, brackets and citations omitted]).
The claim must be ripe at the outset of the action (see Hussein v State of New York, 81 AD3d 132, 135 [3d Dept 2011], affd 19 NY3d 899 [2012]).
As relevant here, Governor Kathy Hochul, through executive order and pursuant to the emergency declaration related to the COVID-19 pandemic, waived the enforcement of Public Health Law § 2828 through April 2022 (see Executive Order [Hochul] No. 4.7 [9 NYCRR 9.4.7]). In November 2022, the Commissioner notified the public that, as of December 2022, she would adopt regulations implementing Public Health Law § 2828. Those regulations largely mirror Public Health Law § 2828 (see Public Health Law § 2828 [1] [a], [c] [i]; [2] [a], [d]; 10 NYCRR 415.34 [b] [3]-[4]; [d]-[e]). The regulations add factors used to determine whether a waiver is appropriate, including "whether the facility should have anticipated" a contingency, whether other nursing homes that have "experienced similar circumstances" have applied for a waiver and whether the facility has undertaken preventative measures (10 NYCRR 415.34 [c] [2] [i], [ii]). Plaintiffs brought this action first in April 2022 and amended their complaint in September 2022, before any regulations were adopted.
Here, plaintiffs' Public Health Law § 2807 (3) challenge lies with the direction to the Commissioner that she ensure "that the proposed [reimbursement] rate schedules for payments to hospitals for hospital and health-related services are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). Plaintiffs' substantive argument is that by applying the penalty provision of Public Health Law § 2828, defendants would be violating Public Health Law § 2807 (3). But in order to evaluate this argument, defendants would have to decide to apply the mandate of Public Health Law § 2828 (1), which, given the waiver provision, is not a certain result (see Public Health Law § 2828 [4]). Relatedly, on both the date this action was filed and the date the amended complaint was filed, the Commissioner had neither promulgated regulations nor taken enforcement action here. As for plaintiffs' prejudice, compliance with Public Health Law § 2828 is reviewed annually, so plaintiffs can adjust their conduct regularly; plaintiffs would also be informed by defendants of any pending action before it was taken, so they are not in a situation where industry planning requires deciding a hypothetical issue prematurely (see 10 NYCRR 415.34 [e] [1] [ii]; [2] [i]). Thus, Supreme Court correctly determined that plaintiffs' Public Health Law § 2807 (3) challenge is unripe (see Hollandale Apts. & Health Club, LLC v Bonesteel, 173 AD3d 55, 60 [3d Dept 2019]; Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d 756, 761 [3d Dept 2011], appeal dismissed 17 NY3d 947 [2011], lv denied 18 NY3d 806 [2012]).
Plaintiffs also contend that Supreme Court erred in holding that the complaint failed to state an equal protection claim. Specifically, plaintiffs contend that Public Health Law § 2828 violates the Equal Protection Clauses of the Federal and State Constitutions because it treats plaintiffs differently than similarly situated health care providers, without any rational basis for doing so. The Equal Protection Clause prohibits "governmental decisionmakers from treating differently persons who are in all relevant respects alike" (Nordlinger v Hahn, 505 US 1, 10 [1992]).
"For purposes of equal protection review, a legislative classification . . . that neither makes distinctions on the basis of a suspect class nor impairs a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate state purpose. In determining whether a reasonable objective is promoted by the classification, the courts are not bound by the stated purpose of the legislation. Instead, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (Meadow E. Assoc. LP v Village of Potsdam, 211 AD3d 1373, 1375 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]).
This "rational basis review" is a "highly deferential" review which presumes that a law is constitutional (Winston v City of Syracuse, 887 F3d 553, 560 [2d Cir 2018] [internal citations omitted]). The burden is on the challenger "to negative every conceivable basis which might support" the law (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 364 [1973] [internal quotation marks and citation omitted]).
Here, because the classifications are not inherently suspect and do not jeopardize the exercise of a fundamental right, rational basis review applies. Public Health Law § 2828 applies to "residential health care facility[ies]" (Public Health Law § 2828 [1] [a]). Specifically excluded are those health care facilities that "primarily care for medically fragile children, people with HIV/AIDS, persons requiring behavioral intervention, persons requiring neurodegenerative services, and other specialized populations that the [C]ommissioner deems appropriate to exclude," along with "continuing care retirement communities" (Public Health Law § 2828 [3]).[FN6] "Continuing care retirement communit[ies]" are "facilities established to provide a comprehensive, cohesive living arrangement for the elderly" but allow for "independent living unit[s] [that] can be made available through a non-equity arrangement or through an equity arrangement including, but not limited to a cooperative or condominium" (Public Health Law § 4601 [2-b] [a]; see Public Health Law § 4612 [1]). Even if we assume, for the purpose of this decision, that plaintiffs have plausibly alleged that plaintiffs and those excluded health care facilities are sufficiently similarly situated, the differential treatment will not violate the Equal Protection Clauses " 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification' " (Bryant v New York State Educ. Dept., 692 F3d 202, 219 [2d Cir 2012], cert denied 569 US 958 [2013], quoting FCC v Beach Communications, Inc., 508 US 307, 315 [1993]).
Under the well-settled case law and the facts presented here, Public Health Law § 2828 easily survives rational basis review because it was reasonably related to a legitimate state objective, i.e., ensuring that nursing homes meet minimum standards of patient care. In April 2021, the state had just experienced the deaths of thousands of nursing homes residents due to the COVID-19 pandemic, so it was sensitive to the health needs of vulnerable nursing home residents. This is exactly within the police power of the Legislature (see Sisario v Amsterdam Mem. Hosp., 159 AD2d 843, 844 [3d Dept 1990], appeal dismissed 76 NY2d 844 [1990]). Public Health Law § 2828 rationally furthers the goal of protecting residents' health; it ensures that nursing homes focus on patient care by capping their profits and requiring minimum revenue and staff investments. Although plaintiffs may disagree with the line drawn regarding minimum revenue spending or to which healthcare providers the mandate applies, "it is the Legislature's function to draw the line" (Bay Park Ctr. for Nursing & Rehabilitation, LLC v Shah, 111 AD3d 1227, 1230 [3d Dept 2013]; see Brightonian Nursing Home v Daines, 21 NY3d 570, 577-578 [2013]; Montgomery v Daniels, 38 NY2d 41, 62-63 [1975]; Corning v Board of Elections of Albany County, 88 AD2d 411, 414 [3d Dept 1982], affd 57 NY2d 746 [1982]). Accordingly, Supreme Court properly determined that Public Health Law § 2828 does not on its face violate the Equal Protection Clauses.
For the same reason, plaintiffs' substantive due process challenge is also without merit. In evaluating such a challenge, courts must ask if there is a rational connection between the regulation and a legitimate state interest (see Montgomery v Daniels, 38 NY2d 41, 54 [1975]). In doing so, "courts are not to consider the wisdom or efficacy of that law or whether it is superior to other alternatives" (Barklee Realty Co. v Pataki, 309 AD2d 310, 318 [1st Dept 2003], appeal dismissed 1 NY3d 622 [2004], lv denied 2 NY3d 707 [2004]). Instead, "it is for the Legislature alone to determine the advantages and drawbacks of the legislation in achieving a legitimate purpose" (id.). "Economic regulation will violate an individual's substantive due process property interest only in those situations, vanishingly rare in modern jurisprudence, where there is absolutely no reasonable relationship to be perceived between the regulation and the achievement of a legitimate governmental purpose" (Brightonian Nursing Home v Daines, 21 NY3d at 575-576 [2013]).
Here, the Legislature's legitimate purpose in passing Public Health Law § 2828 is to ensure that nursing homes meet minimum standards of patient care. The State determined that "[r]equiring nursing homes to spend an appropriate amount of revenue on the direct care of residents and resident-facing staffing will reduce errors, complications, and adverse resident care incidents[,] [and] [i]t will also improve the safety and quality of life for all long-term care residents in New York State" (NY St Reg, Aug. 10, 2022 at 25). Capping profits, and therefore encouraging the reinvestment of revenue, could serve the same purpose.[FN7] "[T]he legitimate purpose justifying the provision need not be the primary purpose of the provision and, indeed, a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack" (Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 290-291 [1999] [internal quotation marks, emphasis, ellipsis and citation omitted]). Accordingly, Public Health Law § 2828 does not on its face violate substantive due process.
We next reject plaintiffs' argument that the penalties associated with both the spending mandate and the excess-revenue cap under Public Health Law § 2828 and its implementing regulation violate the Eighth Amendment's prohibition of excessive fines. The Federal and State Constitutions prohibit the imposition of excessive fines (see US Const 8th Amend; NY Const, art I, § 5; see also Timbs v Indiana, 586 US 146, 149 [2019]). The clauses apply to fines imposed "as punishment for some offense" (County of Nassau v Canavan, 1 NY3d 134, 139 [2003] [internal quotation marks, emphasis and citations omitted]; accord United States v Bajakajian, 524 US 321, 327 [1998]). If the clauses apply,
"[t]he touchstone of this constitutional inquiry is the principle of proportionality: The amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish. In determining gross disproportionality, a court should consider the seriousness of the offense, the severity of the harm caused and the potential harm had the defendant not been apprehended, the maximum fine to which the defendant could have been subject, and the defendant's economic circumstances" (Matter of Prince v City of New York, 108 AD3d 114, 121 [1st Dept 2013] [internal quotation marks, brackets, ellipsis and citations omitted]; see United States v Viloski, 814 F3d 104, 111-112 [2d Cir 2016], cert denied 580 US 1171 [2017]).
Before reviewing the merits, we must first examine the ripeness of plaintiffs' excessive fines claim. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (Farina v Metropolitan Transp. Auth., 409 F Supp 3d 173, 194 [SD NY 2019] [internal quotation marks and citations omitted]). Therefore, "[c]hallenges under the Excessive Fines Clause are generally not ripe until the actual, or impending, imposition of the challenged fine" (id.at 195 [internal quotation marks, ellipsis and citations omitted]).
Here, no fine has been imposed on plaintiffs for noncompliance with Public Health Law § 2828, so there is no record upon which to evaluate this as-applied claim, and there is no specific fine on the statute's face to declare unconstitutional (see C.F. v New York City Dept. of Health & Mental Hygiene, 191 AD3d 52, 79 [2d Dept 2020]). Moreover, the presence of the waiver provisions embodied in Public Health Law § 2828 creates a condition upon which any recoupment is contingent (see Public Health Law § 2828 [4]). Plaintiffs have not alleged that they have sought and been denied waivers under those provisions. Nor do plaintiffs allege that they have unsuccessfully attempted to seek waivers but have been otherwise hindered in those efforts. In fact, the amended complaint is silent as to the waiver provisions of Public Health Law § 2828. In any event, the traditional hallmarks of a punitive statutory penalty — an individualized finding of guilt related to a criminal act and a proviso for the "innocent owner" — are absent here (County of Nassau v Rojas, 49 AD3d 487, 488 [2d Dept 2008], appeal dismissed & lv denied 11 NY3d 729 [2008]; see Austin v United States, 509 US 602, 612 [1993]; Matter of Attorney-General of State of N.Y. v One Green 1993 Four Door Chrysler, 217 AD2d 342, 345 [3d Dept 1996], appeal dismissed & lv denied 88 NY2d 841 [1996]). Instead, it appears that the profits-recoupment provision serves to ensure compliance with the revenue-spending targets (see Matter of Coma Realty Corp. v Davis, 200 AD3d 975, 977 [2d Dept 2021]; OTR Media Group, Inc. v City of New York, 83 AD3d 451, 454 [1st Dept 2011]), although it is not "remedial" in the sense that it serves to raise revenues or compensate the state for economic losses (United States v Bajakajian, 524 US at 329). Although the Senate sponsor stated that Public Health Law § 2828's purpose was to "dissuade bad actors from entering into" the nursing home industry, he also said he hoped the State did not have to collect any fine moneys — meaning he was satisfied with the profits-recoupment provision punishing no one (NY Senate Debate on Senate Bill S2507C, Apr. 6, 2021 at 2187, 2192). As such, Supreme Court properly dismissed plaintiffs' excessive fines claim as unripe.
Finally, we dispose of plaintiffs' causes of action seeking a declaration that Public Health Law § 2828 as applied against them was unconstitutional, because such claims are not ripe for determination.[FN8]
CPLR 3001 provides for the rendering of a declaratory judgment as to the rights and legal relations of the parties to a justiciable controversy. "[C]ourts do not make mere hypothetical adjudications, where there is no presently justiciable controversy before the court, and where the existence of a 'controversy' is dependent upon the happening of future events" (Prashker v United States Guar. Co., 1 NY2d 584, 592 [1956]; see Park Ave. Clinical Hosp. v Kramer, 26 AD2d 613, 614 [4th Dept 1966], affd 19 NY2d 958 [1967]). Here, all of plaintiffs' as-applied constitutional challenges are dependent upon the enforcement regulations to be adopted, which are not before the Court and are purely a matter of speculation.[FN9] Plaintiffs brought this action first in April 2022 and amended their complaint in September 2022, before any regulations were adopted (see 10 NYCRR 415.34). Nor have plaintiffs come forward with any specific factual support for their conclusory claims of constitutional deprivation stemming from the application of the statute. To be sure, plaintiffs have alleged neither that they have received from DOH any notices of recoupment of Medicare and Medicaid funds as fines for violation of statute, nor that they have sought waivers. Because plaintiffs' as-applied challenges are dependent upon the regulations, which were not promulgated when this proceeding was commenced, these objections to the statute are premature and do not present a justiciable controversy ripe for a declaratory adjudication. Consequently, all as-applied constitutional challenges must be dismissed.
Finally, Supreme Court should not have dismissed so much of the proceeding as sought a judgment declaring Public Health Law § 2828 to be unconstitutional. Rather it should have entered a judgment making the appropriate declaration (see CPLR 3001; Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am., 73 AD3d 1257, 1262 [3d Dept 2010], lv denied 15 NY3d 715 [2010]; Matter of Shellard v Town Bd. of the Town of Queensbury, 70 AD3d 1288, 1290 [3d Dept 2010]). We therefore modify the order by issuing a declaration that Public Health Law § 2828 is not unconstitutional.
We have considered plaintiffs' remaining contentions and conclude that they are without merit.
Pritzker, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the motion is denied, without costs.
ORDERED that the order is modified, on the law, without costs, by declaring that Public Health Law § 2828 is not unconstitutional on its face, and, as so modified, affirmed.

Footnotes

Footnote 1:Public Health Law § 2828 was signed into law on April 19, 2021, and amended on April 9, 2022, retroactive to April 1, 2022 (see L 2022, ch 57, part M, § 1).
Footnote 2:Neither of these provisions of the spending mandate was altered by the April 2022 amendments.
Footnote 3: Funds deposited into the 
quality pool are reinvested into nursing homes that comply with certain minimum 
standards (see 10 NYCRR 86-2.42).
Footnote 4:Plaintiffs filed their original complaint in April 2022 and the operative amended complaint in September 2022.
Footnote 5: Plaintiffs have participated at 
all relevant times and contine to participate in the Medicaid and Medicare 
programs.
Footnote 6: "Continuing care retirement 
communit[ies]" are "facilities established to provide a comprehensive, cohesive 
living arrangement for the elderly" but allow for "independent living unit[s] 
[that] can be made available through a non-equity arrangement or through an 
equity arrangement including, but not limited to a cooperative or condominium" 
(Public Health Law §
4601 [2-b] [a]; see Public Health Law § 4612[1]). 
Footnote 7:
"[T]he legitimate purpose justifying the provision need not be the primary 
purpose of the provision and, indeed, a court may even hypothesize the 
motivations of the State Legislature to discern any conceivable legitimate 
objective promoted by the provision under attack" (Port Jefferson Health 
Care Facility v Wing, 94 NY2d 284, 290-291 [1999] [internal quotation 
marks, emphasis, ellipsis and citation omitted]).
Footnote 8:Although Supreme Court did not expressly hold that plaintiffs' as-applied challenges were unripe, inasmuch as defendants moved to dismiss the amended complaint on ripeness grounds, defendants thereby preserved this issue for our review (see e.g. Panetta v Tonetti, 182 AD2d 977, 978 [3d Dept 1992], lv denied 80 NY2d 756 [1992]).
Footnote 9:
Plaintiffs brought this action first in April 2022 and amended their complaint 
in September 2022, before any regulations were adopted (see 10 NYCRR 
415.34).